*White, Perry & Roberts* and *C. L. Taylor,* for defendants in error.

## PROSPECTIVE PROFITS FROM THE DRILLING OF AN OIL WELL.

[Circuit Court of Wood County.]

GEORGE C. LEFFLER v. BISHOP WITTEN AND HERMAN A. SHULTZ.

Decided, November 25, 1905.

*Breach of Contract—Measure of Damages—Where the Work Undertaken Consists Largely of the Labor of the Contractor—Prospective Profits—Hazard of the Enterprise—Verdict—Charge of Court.*

1. The rule that prospective profits can not be recovered in a suit for breach of contract does not apply to a contract for the doing of work, which the contractor expects to perform himself in part with the expectation of getting good wages or of making something out of the job.

2. Where the contract relates to the drilling of an oil well, the plaintiff averring that he was not permitted to perform the work, a judgment for one-half of the amount claimed as the probable difference between the cost of the work and the amount to be paid therefor will not be disturbed, in view of the expenses to be incurred and the hazards of the work.

HAYNES, J. (orally) ; PARKER, J., and WILDMAN, J., concur.

The petition filed by Bishop Witten and Herman A. Shultz, partners, against George C. Leffler, in the common pleas court, sets forth that they entered into a contract with Leffler whereby among other things they agreed to drill an oil well on the property of Leffler. Leffler agreed to furnish the fuel necessary for the work of drilling, and agreed to erect and have ready for use a derrick for the location of the well to be drilled, and to have the derrick in readiness within five weeks from the date of the con-

tract.  Leffler agreed to pay the contract price, one-half in cash and the other half in four months from the completion and acceptance of the well, the plaintiffs agreeing to drill the well to a depth of four hundred feet in the sand or oil-bearing rock. The contract is in writing.  The plaintiffs aver that at the expiration of said five weeks from the date of the contract they were ready and willing to drill the well and demanded of Leffler that he furnish the derrick and permit the plaintiffs to proceed with the drilling of the well according to the terms of the contract. The plaintiffs aver that they have done and performed all the things required of them on their part, but that the plaintiff, disregarding his contract and in violation of the same, did not erect and have ready the rig or derrick for the drilling of the well at the expiration of the five weeks, or at any time at all, and that defendant when requested to permit plaintiffs to drill said well, refused to let them do so, which they say was a damage to them in the sum of four hundred and ninety-five dollars, the difference between what they aver would be the expense of drilling the well, and the profits they expected to make.

The testimony of the plaintiffs was in regard to the breach of the contract and refusal on the part of the defendant, and the cost of that kind of work.  They had already drilled one well on the property, and they called witnesses—experts, who were carrying on that kind of business, to show what the cost would be ordinarily for the completion of a well of that kind; and the defendant in cross-examination developed the fact that in the drilling of wells of that kind, there was a liability to various misadventures which would tend to render the drilling of the well uncertain and indefinite and that the prospective profits would be less followed up by the cost and expense of overcoming these defects.  They have technical names for them in the prosecution of this business; sometimes it results in the loss of a string of tools, as it is called, and some testimony was developed in regard to the probability of that class of accidents, and statements made in regard to their experience.  After this line of testimony had been given to the jury and the testimony on each side had been closed, the defendant requested the court in writing to charge the

jury as follows, which was refused, to which refusal the defendant excepted:

"The plaintiff can only recover on the first cause of action such damage as they actually sustained. They can not recover profits which they might have made if they had drilled the well."

Thereupon the court proceeded to charge the jury very briefly indeed and says to them:

"If after a careful consideration of the evidence relating to this cause of action, you find in favor of the plaintiffs, they would be entitled to recover the contract price for drilling said well, less the actual cost of drilling the same. That is, they would be entitled to recover the profits which they would have made, had they been permitted to drill this well as provided by their contract."

The controversy is in regard to the alleged returns of the contract, which on one side were called profits and on the other side is said to be a remuneration for their labor. It is not very material what they call it; it is what they expected to make out of the job. Counsel for plaintiff in error contend that they can not recover at all for profits, and they cite the general rule that where profits are uncertain they are mere profits, and that the court will not permit a recovery of that class of profits. That is very true in regard to a certain class of cases. We may say that this question of profit is one that is rather difficult in its application, and we find a great variety of cases upon the subject, some coming near to it, and some quite remote.

A case is cited by counsel for plaintiff in error found in 61 N. E. Rep., 561, where a man was carrying on a bicycle factory, and had everything that was necessary to make the wheels except the hubs, and he made some arrangement with the defendants to furnish them, which they failed to do. He was then sued for the value of certain things that had been furnished him, and he set up as a counter-claim the non-delivery of these hubs. He wanted to prove the profits he expected to make upon the bicycles, and the Supreme Court of Indiana held against him, under the general decisions in that class of cases. The court held "that the demurrer to the acknowledged claim should be sustained on the ground that the loss of profits on bicycles which the defendant

might possibly have manufactured and sold can not be considered as damages arising naturally from the breach of the contract to deliver hub machines at the time fixed by the contract;" and holding further, "that speculative and contingent profits on probable sales can not be held to have been in contemplation of both parties at the time of the contract so as to render plaintiff liable therefor."

The case at bar is not exactly a case of manufactured articles. These men took a contract to do a certain piece of work, the work of drilling an oil well. They might do the whole thing by their own labor. What they expected to get was a remuneration for their labor and for the use of the machinery and tools, and for the labor they had to employ, and in all that they expect to get what may be termed a prifit, or to make something out of it, or to make good wages for themselves and get something for the use of the machinery and tools. It comes in that way although it may be indefinite, and belongs to that large class of cases where contracts are taken to do work where there is an expectation of getting good wages or making something upon the contract.

We have been cited in this case by counsel for plaintiff in error to a case decided by our Supreme Court, *Rhodes* v. *Baird,* 16 O. S., 572. In that case there was a contract between the parties whereby the defendant Baird agreed to make a lease for a term of ten years for a piece of land for a peach orchard, and the breach consisted in the failure of the defendant to make the lease, and his causing the plaintiff, within two years after his taking possession, to be evicted from the premises, but after the peach trees were planted. On the trial the plaintiff was permitted to give evidence of the probable profits that might in future be realized from the orchard, judging by the number of crops and the prices of peaches in the county for the last ten or fifteen years, and it was held:

"1.   The evidence as to the probably future profits was incompetent to be given in chief by the plaintiff, as furnishing a basis for the assessment of damages by the jury, such evidence being uncertain and speculative in its nature, and in a great degree conjectural.

"2. To the extent that the damage depended on the loss of the property for the term, its market value at the time of the eviction subject to the performance of the contract on the part of the plaintiff, furnished the standard for assessing the damages. If it had no general market value, its value should be ascertained from witnesses whose skill and experience enable them to testify to such value in view of the hazards and chances of the business to which the land was to be devoted."

It will be seen that while the profits may be uncertain, yet in that case the court recognized the fact that the parties should have damages for the breach of the contract. But the court held that they should have called what might be termed expert witnesses to show, first, whether there was a market value of a lease of that kind; if it had no general market value, its value should have been ascertained from witnesses whose skill and experience enabled them to testify directly to such value, in view of the hazards and chances of the business to which the orchard was subject. After all, it will be seen, without calling witnesses, the question comes right back to the chances and hazards of the business of peach growing; that is to say, the probability of their having a crop every year, or of losing many crops during the term, and all the various incidents and hazards attending the cultivation of a peach orchard.

We had a case in this circuit which was decided in 1891 by this court, Judge Moore taking the place of Judge Scribner. It was the case of *The City of Toledo* v. *Libbie*, 19 C. C. R., 704, wherein a man took a contract for building sidewalks and he expected to make a certain profit out of the work. He expected to do the work and get a certain sum for his labor and make a certain profit on the materials that went into the construction—get an ample compensation out of the two; that after he had partially entered into the performance of his contract, the city council stopped further construction and prohibited him from further pursuing his contract, and the court in that case held:

"In an action by a contractor against a city for damages for having prevented such contractor from performing or completing his contract, the plaintiff would be entitled to recover the difference between the contract price and what it would have actually

cost to have completed the contract; in other words, the profit he would have made.

''Where therefore the contractor has taken the contract at less than it was worth to do the latter, it would be error in the court to permit him to offer evidence to prove what it was reasonably worth to do the labor; it would be error in the court to permit him to offer evidence to prove what it was reasonably worth to do the work. If the contractor took the contract at a price at which there was no profit in it, he lost nothing by the action of the city abandoning the contract, and he can recover nothing; but if his contract price was in excess of what it would be worth to complete the work, that would be the measure of damages.''

That case was affirmed by the Supreme Court in 51 O. S., 562.

This case at bar lies along the line of that class of cases. The testimony is not so full and complete perhaps as I would like to have seen it, speaking for myself, but there was testimony on all of those points, and there was a charge of the court. The court's charge is short and brief, and there was a denial prayed for by the plaintiff in error, but we are of the opinion, taking the whole of the testimony together in the case and its application, that the charge of the court should be sustained.

It is shown by the record that the jury in its verdict returned on this point in the petition about two hundred and fifty dollars, or about half of the claim of the plaintiffs' below, and it is evident that they took into consideration the cost of doing the work, its hazards and probabilities. That is all that the Supreme Court of this state requires in regard to anything. Taking all the probabilities into consideration in this case, the jury reduced the claim of the plaintiffs about one half, and it looks to us as if that deduction was proper and right. This party made a contract and broke it, and he should pay such damages as would, in the judgment of the jury, result from a breach of the contract, and the judgment of the court of common pleas will be affirmed, without penalty.

*W. H. McMillen, Jas. O. Troup,* for plaintiffs in error.

*Baldwin & Harrington,* for defendant in error.