BROWNELL & COMPANY, Appellants, v. D. Chapman, Appellee.

1. **Contracts**: BREACH: MEASURE OF DAMAGES. Upon a failure to supply boilers and machinery for a boat, used for the accommodation of visitors at a summer resort, within the time contracted for, *held*, that the measure of damages was the rental value of the boat during the time the owner was deprived of its use in consequence of the breach.

2. ———: ———: ———. If in such case, by reason of the breach of said contract, the owner of the boat lost his time, and was compelled to keep his employes idle at his expense, *held*, that he was entitled to recover for the value of his time, and for the losses incurred in keeping his employes in readiness for work to be done upon the boat under the terms of the contract.

*Appeal from Council Bluffs Superior Court.*—HON. J. E. F. McGEE, Judge.

TUESDAY, FEBRUARY 2, 1892.

ACTION on a contract in substance as follows:

"APRIL 12, 1889.

"*D. Chapman, Esq., Council Bluffs, Iowa.*

"DEAR SIR:—We will furnish you one of our Scotch-marine boilers,—54 dia., 84 long, made of 60,000 T. S. marine steel shells, 5-16: * * * all the above delivered and set up (you to do all woodwork),—for the sum of one thousand and twenty-three dollars ($1,023.00). We will allow you three hundred and sixty dollars ($360.00) for your two engines, boiler, heater and inspirator, wheels, shafting and couplings. Hoping to receive your order, we are yours truly,

"BROWNELL & CO.

"P. S. We guarantee to deliver above in thirty days from April 13. It is understood you are to have ninety days' option on sale of engine and boiler you have. Accepted.

"D. CHAPMAN."

This action is to recover the balance of the con-
tract price, after deducting the three hundred and sixty
dollars for the defendant's engines, etc.   There was a
failure to deliver the boilers, etc., on the part of the
plaintiffs for some eighteen days after the time specified
in the contract; and the defendant presents a counter-
claim because of the failure and for defective work-
manship in putting in the boilers.   A reply put in issue
certain allegations of the counter-claim, and a trial by
jury, resulting in a verdict and judgment for the
defendant for thirty-one dollars and twenty-five cents.
The plaintiffs appeal.—*Affirmed*.

*Isaac Adams*, for appellants.

*D. B. Daily*, *Emmet & Finley* and *Ambrose Burke*,
for appellee.

GRANGER, J.—I. Lake Manana is a small lake in
the vicinity of Council Bluffs, in Pottawattamie county,

1. CONTRACTS: and is a summer and pleasure resort.
breach: meas-
ure of dam- Boats are used on the lake for the accom-
ages. modation of visitors, and among them
was one known as the "M. F. Rohrer," belonging to
the defendant.   The boat was operated on the lake in
the season of 1888, and the boilers and machinery con-
tracted for, as known to the parties, were to refit the
boat for use in the season of 1889.   A breach of the
contract on the part of the plaintiff by a failure to
deliver within the time is not questioned, and the
important question on this appeal is as to the proper
measure of damage.

The superior court admitted evidence to show, and
instructed the jury on the theory that, the measure of
damage was the rental value of the boat during the
time the defendant was deprived of its use in conse-
quence of the breach.

The appellants' thought is that the measure of
damage is the "interest of the capital invested in the

boat." This latter rule has something of support in
authority, but it is far outweighed by the number of
cases and the reasoning supporting the rule adopted by
the court. In considering the question we must keep
in view the rule, universally recognized, that the dam-
age for breach of contract must be limited to such as
would naturally come within the contemplation of the
parties at the time the contract was made. The plain-
tiff, when it agreed to furnish and set the boilers,
knew they were to be used in operating the boat; that
a breach on its part would deprive the plaintiff of its
use; and it would naturally contemplate the value of
such use as the injury that would be sustained; and
such is, as a matter of fact, the actual damage.
The appellants cite a number of cases, but all except
two, we think, support the rule adopted by the court.
*Brown v. Foster*, 51 Pa. St. 165, is a case quite similar
to this. Repairs to a boat by putting in machinery
were to be completed by October first. The work was
not done until December fifteenth. The trial court gave,
as the rule of damage, "that the measure in such a case
is the ordinary hire of such a boat for the time in ques-
tion, for the time the plaintiff was in default." The
complaint in that case of the rule as given was by the
defendant who was seeking damage, and the court said
his complaint was without reason. The case cited is
not authority for the appellants' position. In *Mining
Syndicate v. Fraser*, 130 U. S. 611, 9 Sup. Ct. Rep.
665, the interest on the investment in a mill that had
been delayed because of defective machinery was
allowed as the measure of damage, but only in case
the jury found there was no evidence of the rental
value of the mill. The case clearly recognizes the rule
as to rental value as a correct one. In *Griffin v. Colver*,
16 N. Y. 489, is the following syllabus, having full sup-
port in the opinion: "Upon a breach of a contract to
deliver at a certain day a steam engine built and pur-
chased for the purpose of driving a planing mill and

other definite machinery, the ordinary rent or hire
which could have been obtained for the use of the
machinery whose operation was suspended for want of
the steam engine may be regarded as damages." In
*Nye v. Alcohol Works*, 51 Iowa, 129, this general prin-
ciple has support argumentatively, but another rule,
because of distinguishing facts, is sustained. The
cases of *Allis v. McLean*, 48 Mich. 428, 12 N. W. Rep.
640, and *Taylor v. Maguire*, 12 Mo. 313, are not in
harmony with this view, but they are clearly overborne
by the weight of the other cases and the current of
authority. The latter case cites, as decisive of the
point, *Blanchard v. Ely*, 21 Wend. 342. In *Griffin v.
Colver, supra*, the *Blanchard Case* is commented upon
and explained, and, in effect, it is divested of the
authority claimed for it in the Missouri case.

But it is said that the boat in question had no estab-
lished rental value. By this it is meant that the boat had
never been rented. But it will not do to say that because
an article has never been rented it has no rental value,
any more than it would to say that because an article
had never been sold it has no market value. We should
assume that an article suitable and adapted for use at a
time and place has both a market and rental value, at
least until the contrary appears. In *Jemmison v. Gray*,
29 Iowa, 537, this court approved an instruction that
"the fact, if proven, that twelve thousand, two hun-
dred and thirteen ties could not have been purchased
for immediate delivery in the market at the places
where said ties were to be delivered on the first day of
October, 1869, would not, of itself, establish the fact
that there was not a market price for such ties at such
time and place." The holding affords a strong pre-
sumption in favor of a market price. A like presump-
tion would prevail in favor of an article having a value
for hire at a time and place where such articles are in
demand for use. The testimony shows that boats vary-
ing in size were rented on the lake during the season,

both by the day and for trips. This boat had perhaps twice the carrying capacity of any other boat on the lake, and in that respect formed an exception; but the rental value of boats depended on their size and adaptation for use, and it was competent for persons having knowledge of the business and prices paid for other boats to give an opinion as to the rental value of such a boat as the one in question. It is contended that the method of ascertaining the rental value involves the uncertainties and facts on which profits are excluded as a rule of damage; but we think not. It is true that rental values are generally fixed from a calculation of the profits to be derived from the use, but the rental is a fixed, definite value, agreed to be paid, and the bailee assumes the uncertainties as to the profits.

The appellants say: "For an analogous case to the one at bar, in there being an attempt to prove a rental value to property when the facts showed that the property in question had no rental value, the court is referred to *Coal Co. v. Foster*, 59 Pa. St. 365." The case, as we read it, is without a bearing on the question. The defendant agreed to furnish for the coal company an engine of a particular size and make. There was no other engine of the kind that the company could use. There was a delay in the delivery, and the company was compelled to transport its coal by horsepower, as it had before done. The trial court gave the rule "that the measure of damage for the delay was the ordinary hire of a locomotive during the period of delay." The reviewing court gave the rule as the difference between the cost of transporting the coal by horse and by locomotive power, but placed its ruling on the fact that the parties knew there was no other engine to be operated on the track of the company, and could not have had such damage in view in making the contract. It will be seen that the cases are different. If in the case at bar the defendant's boat had been operated at an additional cost by doing the same amount of work dur-

ing the delay, it would be reasonable to say the damage to him was the difference in the cost.   But his is an entire loss of use, and the value of such use is the damage, where it is proximate, and not speculative or uncertain.

II. A part of the counter-claim is for loss of time by men kept in readiness by the defendant to do the part of the work belonging to him in adjusting the boilers and machinery, as provided by the contract.   On this branch of the case the court gave the following instruction:

"5.  If you find from the evidence, and under the third and fourth instructions, that there was a contract, as set out, between plaintiffs and defendant, and that plaintiffs were in default in carrying out said contract; and if you find that, by reason of such default, defendant was damaged; and if you further find that defendant was in readiness to carry out his part of said contract at the time specified therein; and that at the time he was in readiness to run and operate his boat; and that the boat was necessarily idle during the period of plaintiffs' default, by reason of such default—then the defendant would be entitled to recover the ordinary and reasonable rental value of said boat during the time of said default, and such reasonable and necessary amount (if there be any such amount) as he may have been required to pay to any men that he may have employed during said enforced idleness for the purpose of running said boat, if he had any such men in his employ who remained in his employ and idle by reason of such default; and, if you find that the defendant had placed himself in readiness to work upon said boat himself at the time specified in the contract for the furnishing of said machinery, and that he necessarily remained idle during the time of such default, if any, of the plaintiffs, and used ordinary diligence to find other employment for that time, you will then further find the fair and reasonable value of

his services during the period of such default as part of the damage, if any, which defendant sustained."

Complaint is made of the instruction as stating an erroneous rule of damages, but we discover no error. If, because of the breach, the defendant lost his or the time of his employes for such time and expense, he should be reimbursed. The rule is recognized in *Mining Syndicate v. Fraser, supra*. The instruction fairly protects the rights of the plaintiffs.

A number of other questions are argued, all of which we have examined, and find no prejudicial error. It would serve no good purpose to extend the opinion to present them. The judgment is AFFIRMED.