## ACME CYCLE COMPANY *v.* CLARKE ET AL.

[No. 19,073. Filed October 11, 1901.

| 157 | 271 |
| 159 | 388, |
| 157 | 271 |
| 165 | 241 |
| 157 | 271 |
| 166 | 132 |
| 166 | 133 |
| 166 | 136 |
| [168 | 532] |

DAMAGES.—*Speculative Damages.*—*Pleading.*—A counterclaim for damages in an action for goods sold and delivered alleging plaintiffs' failure to furnish to defendant a certain machine for the manufacture of bicycle hubs according to contract; that it was well known to all persons at the time the contract was made that the demand for bicycles was so great that it could not be supplied; that there was an unlimited supply on the market of all parts of a bicycle except the hub, but no hubs could be purchased; that claimant was prepared to manufacture hubs for five bicycles a day, and with the machine would manufacture 500 more bicycles per month than it was then doing was insufficient, where it was not shown that claimant was prepared to manufacture more bicycles than it had the capacity to make hubs for, or making preparation for such manufacture, or, if such additional parts were to be purchased, when and from what sources claimant expected to procure such other parts, and whether it had made any engagements for such supplies. *pp. 272-279.*

APPEAL AND ERROR.—*Striking Out Pleading.*—A cause will not be reversed because of the action of the court in striking out a pleading, where the pleading stricken out contained nothing but immaterial matter. *p. 279.*

Acme Cycle Co. *v.* Clarke.

APPEAL AND ERROR.—*Special Bill of Exceptions.*—A special bill of exceptions under §642 Burns 1901 must show that the evidence embraced in the special bill was all of the evidence given in the cause upon the subject referred to in the questions and answers set out in the bill. *p. 279.*

SAME.—*Bill of Exceptions.*—A bill of exceptions must be filed after being signed by the trial judge. *p. 280.*

From Elkhart Circuit Court; *P. L. Turner,* Special Judge.

Action by Henry Clarke and others against the Acme Cycle Company in which defendant sought to recover damages on a counterclaim. From a judgment for plaintiffs, defendant appeals. *Affirmed.*

*J. M. Van Fleet* and *V. W. Van Fleet,* for appellant.

*J. H. State, C. W. Miller* and *J. S. Drake,* for appellees.

DOWLING, J.—The appellees sued the appellant upon an account for goods sold and delivered. The answer was a general denial, and a plea of payment. The appellant also filed seven paragraphs by way of counterclaim for damages in the sum of $15,000. A demurrer to the fourth paragraph of the counterclaim was sustained, and on motion of the appellees the fifth paragraph of the counterclaim was stricken out. A reply in denial of the second paragraph of the answer and answers in denial of the remaining paragraphs of the counterclaim were filed by the appellees. The cause was tried by a jury, and a verdict in favor of the appellees was returned.

The errors assigned and discussed by counsel are the rulings of the court upon the demurrer to the fourth paragraph of the counterclaim, upon the motion to strike out the fifth paragraph of counterclaim, and upon the motion for a new trial.

The fourth paragraph of the counterclaim stated in substance that the appellees sold and agreed to deliver to the appellant, on or before September 20, 1895, one complete hub plant, consisting of one Bardons & Oliver hub machine, and one number four machine fitted up for the second oper-

Acme Cycle Co. *v.* Clarke.

ation, both to be complete, with tools; and two number four Bardons & Oliver screw machines, complete, with number two spindle friction gears, etc., for all of which the appellant agreed to pay the appellees $1,650; that said ma-chinery was not delivered until January 20, 1896; that at the time said contract was made it was well known to all persons that the demand for bicycles was so great that it could not be supplied during the years 1895 and 1896; that while there was at that time in the market an unlimited supply of all the parts of a bicycle except the hubs, no hubs could be purchased, and that all persons well knew this condition would last during the years 1895 and 1896; that the appellant, when said negotiations were pending and said contract was made, was prepared to manufacture five front hubs and five rear hubs per day; that with a machine which would make 125 front hubs, or 75 rear hubs per day, it would manufacture at least 500 more bicycles per month than it was then doing, that the net profit on each bicycle was $5, and that these facts were contemplated by the parties at the time the contract was made. That, in consequence of the failure of the appellees to deliver said hub plant for four months after September 20, 1895, appellant failed to make 2,000 bicycles, which it would have made if it had been furnished with said hub plant, and that during said period appellant received, and was unable to fill 2,019 orders for bicycles; that appellant's profits on said orders would have been $5 per wheel on 1,157 wheels, and $6 per wheel on 862 wheels, and that appellant was thereby damaged in the sum of $10,957.

The sole ground of the appellant's claim for damages is the alleged loss of contingent anticipated profits. The basis upon which they were estimated was the general demand for bicycles, the scarcity of hubs for these machines, and its belief that with a machine which would manufacture 125 front hubs or 75 rear hubs in a day, it would be able to man-

ufacture at least 500 more bicycles each month than it was then doing, and that its net profit on each bicycle would be $5. It is stated in the complaint that these facts were known to, and were contemplated by, the parties at the time the contract was made.

Before passing to the consideration of the rule of damages to be applied in this case, it is to be observed that the complaint is silent in respect to certain facts of much importance even in the view of the law taken by appellant's counsel. We find nothing in the paragraph to indicate that at the time the hub machines were to be delivered the appellant was prepared to manufacture more than five bicycles in a day, or, say, 125 in a month. This seems to have been the limit of its capacity when the contract was made. It was then using machines which could turn out only five front hubs, and five rear hubs in one day. It is not stated that the appellant was manufacturing, or was prepared to manufacture, more bicycles than it had the capacity to make hubs for. If it did so, it must have purchased all of its hubs in excess of those manufactured by its own plant. But, if it had a plant of sufficient capacity to manufacture more than five bicycles in a day, that fact is nowhere stated. It cannot be supposed that a small establishment, capable of turning out only five bicycles in a day, or 125 in a month, could suddenly expand, without considerable additions to its buildings, power, and other machinery, to a capacity of twenty-five bicycles in one day, or 625 in one month. If the appellant had so extensive a plant, or if in anticipation of the great increase in its business it enlarged its works after ordering the hub machines from the appellees, the complaint should have said so. As nothing of this kind is claimed, we must assume that the appellant made no change in its plant before the hub machines were delivered, and that, in fact, it waited to see what the new machines would do, and whether the demand for bicycles would justify it in enlarging its works. If this was the plan of the appellant, and if the

erection, purchase, or leasing of additional buildings in which to carry on its business, and the purchase, construction and adjustment of a vast quantity of new machinery required for the manufacture of 500 additional bicycles per month was postponed by the appellant until actual delivery of the hub machines by the appellees in January, 1896, it follows that the appellant was not prepared to use the new machines, and that if they had been delivered on or before September 20, 1895, considerable time must have elapsed before the appellant could have been prepared to increase its output from 125 bicycles per month to 625 per month. The hub of a bicycle is an important part of the mechanism, but there are many other parts, and, unless, in addition to machines for making the hubs, the appellant was prepared to manufacture all the other parts of a bicycle, it could not be said that its losses of profits on sales resulted from the failure of the appellees to deliver the hub machines. If the appellant did not intend to manufacture the other parts of the bicycles, but expected to purchase all of them, excepting the hubs, then it seems that it should have been stated with some particularity when and from what sources the appellant expected to procure such other parts and whether it had made any engagements for such supplies. If no such contracts were made by the appellant, how could it be said with any degree of certainty that the appellant could at any time go into the market, and buy all the parts of a bicycle excepting the hubs at such prices as would enable it to make a sure and reliable profit of $5 on each bicycle? The case as made by the fourth paragraph of the counterclaim stands thus: The appellant says that on July 20, 1895, it had the capacity to manufacture five bicycles a day, and no more. If it had a machine for making hubs alone, which would turn out seventy-five rear hubs or 125 front hubs per day, it could then *manufacture* and *sell* twenty complete bicycles per day *at a profit of $5 on each bicycle.* Do the facts stated authorize any such conclusion?

Upon the breach of a contract to deliver machinery to be used in a manufacturing establishment, the rule is, that "the damages which the injured party ought to receive in respect of such breach of contract are such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." *Hadley* v. *Baxendale,* 9 Exch. 341; *Horne* v. *Midland R. Co.,* L. R. 8 C. P. 131, 4 Moak's Eng. Rep. 369; *France* v. *Gaudet,* L. R. 6 Q. B. 199; *Griffin* v. *Colver,* 16 N. Y. 489, 69 Am. Dec. 718; *Howard* v. *Stillwell, etc., Co.,* 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147; *Harvey* v. *Connecticut, etc., R. Co.,* 124 Mass. 421, 26 Am. Rep. 673; *Mather* v. *American Ex. Co.,* 138 Mass. 55, 52 Am. Rep. 258; *Gravel Road Co.* v. *Cox,* 39 Ind. 260.

The rule refers (1) to such damages as may fairly and reasonably be considered as arising according to the usual course of things from the breach, and (2) to such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. In this case, the loss of profits on the bicycles which the appellant might possibly have manufactured and sold cannot fairly and reasonably be considered as damages arising naturally from the breach of the contract to deliver the hub machines at the time fixed by the contract. If the appellant had provided buildings, machinery, and materials with which to manufacture the additional 500 bicycles per month and if, by the failure of the appellees to deliver the hub machines, it had been deprived of the use, or the opportunity to use such buildings, machinery, and materials, by the default of the appellees, the reasonable value of such use during the period of delay might have been fairly and reasonably considered as damages arising naturally from the breach of the contract to

deliver.  Under such circumstances, the principle on which *Birkey, etc., Co.* v. *Hascall,* 123 Ind. 502, 8 L. R. A. 65, was decided would apply.  But it does not appear that the appellant incurred any expense, or made any preparation whatever in expectation of enlarging its output and sales. Its situation after making the contract seems to have remained just as it was before.  In view of these facts, we cannot say that any damages whatever arose in the natural course of things from the failure of the appellees to deliver the machines on or before September 20, 1895.  It remains, then, to consider what damages may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it.  It is not asserted in the counterclaim that notice of any kind was given by the appellant to the appellees of the situation of the appellant, or of its ability to manufacture 500 additional bicycles, or any other number per month, provided it could obtain the hub machines.  We do not wish to be understood as intimating that such notice would have made the appellees liable, but we refer to this point only to say that, if notice was required, none was given.  It is alleged that the demand for bicycles was in excess of the supply; that all parts of a bicycle, excepting hubs, could be bought in the market; that hubs could not be had; and that these facts were known to every one.  But, certainly, proof of knowledge of these facts by the appellee would not be sufficient to establish the proposition that they had in contemplation at the time the contract was made, as the result of a breach of it by the appellee, a loss of profits by appellant of $5 per bicycle on 500 completed bicycles per month.  Such supposed damages consist wholly of imaginary profits.  The expected product of the hub machines was only one out of very many of the parts which went to make up a complete bicycle.  So many other things must have been obtained by the appellant before it could manufacture a single bicycle, and the contingencies upon which its ability

to dispose of its product at a profit were so numerous, and diversified, and uncertain, that the loss of such profits could not reasonably be supposed to have entered into the contemplation of the parties.    The later English cases indicate that where extraordinary liabilities are to be assumed by a party contracting to deliver goods, it should appear that he understood the nature of the responsibility he was taking upon himself, and that his compensation should include some consideration for the responsibility assumed.    Furthermore, these cases intimate that the liability of the party for the extraordinary damages, which might result from a breach of the contract to deliver, should be so plainly understood as to render it one of the terms of the contract that, in case of a failure to deliver the goods, the person guilty of the breach would be responsible for such damages.    And the very reasonable observation has been made that, if parties desire to avail themselves of a claim to such damages, they should expressly stipulate for them in the contract itself.

It is not necessary to pursue this subject further.    This case is easily distinguishable from all those in which it has been held that the party in default is liable for the loss of future profits.    Here there was no outlay, no deprivation of the use of property, no loss upon contracts previously entered into by the appellant.    The only damages alleged to have been sustained by the appellant consisted in the loss of future, contingent, speculative, and imaginary profits. The appellant asks us to assume that, if it had received from the appellee a piece of machinery for manufacturing a small, though essential, part of a complicated article consisting of many members, everything else required for the construction of that article could easily have been procured at reasonable prices, and without delay; that the appellant would have been provided with all necessary shops, and warehouses, and workmen; that customers would have been found for its increased product; and that a large profit would have been realized by it upon the sale of every bicycle.    But

Acme Cycle Co. *v.* Clarke.

all this is merely speculative, and the allegations of the counterclaim furnish no basis upon which the damages, if any, sustained by the appellant can be calculated. It is settled that profits which are speculative and contingent cannot be recovered. *Gravel Road Co.* v. *Cox,* 39 Ind. 260, and cases cited; *Montgomery, etc., Soc.* v. *Harwood,* 126 Ind. 440, 10 L. R. A. 532.

(2) The *fifth* paragraph of counterclaim was substantially the same as the *fourth,* except that it claimed damages for the loss of profits on bicycle hubs. For the reasons already set out with reference to the *fourth* paragraph, the *fifth,* if demurred to, must have been held insufficient. This paragraph was stricken out on motion of the appellee, and the ruling is assigned for error. While motions to strike out pleadings are not regarded with favor, yet when the pleading contains nothing but immaterial matter, no sufficient cause of action being disclosed, and a correct result is reached, a judgment will not be reversed because of such a ruling. *Carver* v. *Carver,* 44 Ind. 265; *McGrew* v. *McCarty,* 78 Ind. 496; *Harris* v. *Randolph Co. Bank, ante,* 120.

(3) The remaining questions which the appellant attempts to present relate to the admission of certain evidence over the objection of the appellant, and the misdirection of the jury. An effort has been made to reserve some of these questions by a special bill of exceptions under §642 Burns 1901. The bill, however, contains no statement that the evidence embraced in the special bill was all of the evidence given in the cause upon the subject referred to in the questions and answers set out in the bill. The statement "that neither party had given any evidence of, or concerning, any machines other than those so sold and delivered by the plaintiffs to the defendant," does not necessarily imply that no evidence was given concerning the machines sold by the plaintiffs to the defendant, to which the testimony set out in the special bill might not properly apply. The substance of the evidence admitted by the court was, that the appellee

had manufactured and sold hub machines similar to those delivered to the appellant to other parties, and that they had made from ninety to 120 front hubs, and eighty-five rear hubs in a day of ten hours. It may be conceded that it was incompetent for the appellees to establish the quality and value of the hub machines sold by them to the appellant by proving the character and efficiency of machines sold by them to other persons. But there may have been evidence on behalf of the appellant that the machines manufactured by the appellees, and sold to appellant, were constructed upon a defective principle and that from some inherent error in their mechanism they could not do the work they were intended to perform. If such proof was made on the part of the appellant, it authorized the introduction of evidence of the practical working of other machines constructed in the same manner, and upon the same principle. In various other ways, the evidence of the appellant "concerning the machines sold and delivered by the plaintiffs to the defendant," may have been of such a nature as to have rendered it proper to prove the working qualities of similar hub machines.

For like reasons, we cannot determine the question of the correctness of the fifth instruction asked for by the appellant. The evidence may have been such that the modification made by the court was proper.

The other questions raised by the appellant relate to other rulings of the court upon the evidence, and to instructions given and refused. The decisions complained of are such as can be presented to this court for review only by bill of exceptions. But the bill in this case was signed by the trial judge June 22, 1899, and was not filed after it had been so signed. The filing on June 8, 1899, by the stenographer before it was signed by the judge was not sufficient. As the evidence and the instructions are not in the record, we cannot consider the alleged errors predicated of them. Judgment affirmed. Baker, J., did not participate in this decision.