Connersville Wagon Co. v. McFarlan Carriage Co.—166 Ind. 123.

---

## CONNERSVILLE WAGON COMPANY v. McFARLAN CARRIAGE COMPANY.

[No. 20,629. Filed November 28, 1905. Rehearing denied February 14, 1906.]

1. CONTRACTS. — *Optional.* — *Validity.*—*Frauds, Statute of.*—A contract, in writing, whereby defendant agreed to furnish 10,000 sets of wheels to plaintiff as it might want them during the year, deliveries to be made at plaintiff's request, the minimum amount ordered to be not less than 5,000 sets, is not *nudum pactum* as to the optional part thereof, nor is such portion within the statute of frauds. p. 128.

2. SAME.—*Refusal to Perform.*—*Notice.*—Defendant's notice to plaintiff that it refuses further to perform its contract, excuses plaintiff from any further attempt to perform its part of such contract. p. 129.

3. PLEADING. — *Complaint.* — *Contracts.* — *Breach.* — *Speculative Damages.*—A complaint alleging that because of defendant's breach of its contract to furnish plaintiff 10,000 sets of wheels plaintiff could not run its factory to its full capacity; that it had solvent orders for all carriages it could have made; that its loss by reason of its failure thus to operate was a certain sum, calls for contingent or speculative damages. p. 129.

Connersville Wagon Co. *v.* McFarlan Carriage Co.—166 Ind. 123.

4. PLEADING.—*Complaint.*—*Partly Good.*—A complaint which states a cause of action for any part of the relief sought, is good on demurrer.  p. 130.

5. SAME. — *Answer.*—*"Unavoidable Cause."*—*Conclusions.* — An answer in an action for the breach of a contract wherein defendant is relieved from compliance therewith if failure to comply therewith is for an "unavoidable cause," must set forth the facts constituting same and not merely conclusions.  p. 130.

6. APPEAL AND ERROR.—*Evidence.*—*Admissions.*—*Wrong Theory.* —Where evidence is admitted, over objection, to establish facts supporting an erroneous theory of the complaint, a determination of such theory determines the questions on such admission of evidence.  p. 130.

7. DAMAGES.—*Evidence.*—*Question for Jury.*—Before plaintiff can recover damages he must show with the reasonable certainty required by the law the extent of his damages, inferences and deductions from the facts being for the jury.  p. 130.

8. SAME.—*Speculative.*—*Contracts.*—*Breach.*—In an action for the breach of a contract to deliver plaintiff 10,000 sets of wheels, damages can not be recovered for business losses which plaintiff suffered because of its failure to run its factory at its full capacity and sell the product thereof at the market price, such damages being speculative and conjectural.  p. 131.

9. SAME. — *Speculative.* — *Contracts.*—*Breach.*—*Interruption of Business.*—Damages for the interruption of a business concern may in certain cases be granted where such interruption was the direct and natural result of such breach and where the efflux of time makes the damages ascertainable where it was conjectural before, or where there is an absence of any other measure of damages which would cover the actual loss.  p. 134.

10. SAME. — *Contracts.*—*Breach.*—*Proximate Result.*—*Intention.* —In an action for breach of a contract to deliver 10,000 sets of wheels, damages for loss of business profits are not collectible, since (1) ordinarily such a breach would not result in the loss of the use of a factory, (2) the *prima facie* presumption is, that the parties expected only the ordinary damages to be given in case of breach, and (3) the ordinary damages are substantial and cover the natural results of such breach.  p. 135.

11. SAME.—*Contracts.*—*Breach.*—*Sales of Goods.*—The ordinary measure of damages in case of the breach of a contract for the sale of goods is the difference between the contract price and the market price.  p. 135.

12. SAME.—*Contracts.*—*Breach.*—*Loss of Use of Property.*— Where, under special circumstances, damages for the loss of the use of property is given because of defendant's breach of ·

contract, such damages are confined to the reasonable value of such use of property, and are not given for the conjectural loss of profits.   p. 136.

13.   APPEAL AND ERROR.—*General Finding.—Statements Therein.* —Where the trial court makes a general finding, statements therein, explanatory thereof, will not be considered on appeal. p. 138.

From Henry Circuit Court; *John M. Morris,* Judge.

Action by the McFarlan Carriage Company against the Connersville Wagon Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*McKee, Little & Frost* and *M. E. Forkner,* for appellant. *William A. Brown* and *Reuben Conner,* for appellee.

GILLETT, C. J.—Action by appellee against appellant for breach of contract in failing to deliver 10,000 sets of wheels. A trial by the court resulted in a finding and judgment for appellee.

The threshold question is whether the court below erred in overruling a demurrer to the complaint.

It is alleged in said pleading, in substance, that on November 15, 1900, appellant was engaged in the manufacture, on an extensive scale, of wheels designed for use in the manufacture of buggies, carriages and phaetons; that on said date appellee was the owner of an extensive plant, consisting of buildings, boilers, engines, iron and woodworking machines, tools and other fixtures and appliances necessary to constitute an efficient plant for said work, and that it then had 300 operatives engaged in said business; that during the year 1900 appellee ran its said plant up to or near its maximum capacity, and that it was not more than able to supply its solvent and desirable customers; that the business of said years was very profitable, and on said date the prospects for an increased demand in said line were good; that appellee determined to continue said busi-

ness for another year, and to that end was engaged on said date in making contracts with divers persons and firms for such materials as it would probably need; that persons at that time engaged in such manufacture knew that for the succeeding year there would be an extensive demand for springs, axles, wheels and other parts necessary in the manufacture of the class of vehicles that appellee was putting on the market, and, as appellee had no facilities for the manufacture of wheels, it entered into a written contract with appellant on said date, a copy of which is set out in the complaint. By said contract, which was signed by both parties, appellant agreed to furnish to appellee, during the year that was then to follow, 10,000 sets of wheels, on the basis of a certain scale of prices, deliveries to be made from time to time as appellee might direct, and the latter agreed to purchase such quantity of said 10,000 sets as it might want; the minimum quantity, however, to be not less than 5,000 sets. It was also provided that in case of fire or strikes or any other unavoidable cause the contract should not be binding upon either party. The complaint further alleges that appellant entered into said contract with a full knowledge of the foregoing facts. It is also stated that appellee received of appellant, under said contract, up to August 1, 1901, 6,445 ½ sets of wheels. The basis of appellee's objection concerning these wheels appears from the complaint to be that although appellant was from time to time urged to promptitude in making deliveries, there were long and unreasonable delays in doing so. As to the balance of the sets to be delivered, it is alleged that on September 1, 1901, appellee had given appellant orders for 2,000 additional sets, which orders had not been filled, and that appellant at that time refused to furnish further wheels under said contract. At this point we deem it necessary to a proper understanding of the case to quote the remaining averments of the complaint: "Plaintiff further avers that

the defendant at the time of making said contract, and at all times since, had full knowledge of all the foregoing facts, and knew at the time of the making of said contract that plaintiff was contracting for said wheels for the purpose of enabling it, the plaintiff, to continue its said business for another year; that the plaintiff, from November 15, 1900, until November 15, 1901, had its said factory equipped, as hereinbefore stated, together with 300 employes therein, and that during said time had solvent and desirable orders from its customers for more goods than it could have manufactured if plaintiff had run its factory up to its full capacity; that plaintiff had the capacity to manufacture in its said factory, with the number of employes it had, as hereinbefore stated, as many as seventy-five vehicles per day; that from January 1, 1901, until July 1, 1901, plaintiff could and would have manufactured 11,700 vehicles, for all of which plaintiff had desirable and solvent customers, at a fair and reasonable profit; that from January 1, 1901, until July 1, 1901, owing to the fact that all vehicle wheel manufactories had orders for more wheels than they were able to manufacture, it was possible for the plaintiff to obtain but a small number from any other source than from the defendant; that by reason of the defendant's not furnishing said wheels as the same were ordered, as by the terms of said contract the defendant was bound to do, the plaintiff was prevented from running its factory up to its capacity, and was not able, from January 1, 1901, up until July 1, 1901, to manufacture more than sixty-five vehicles per day, using in the manufacture of that many vehicles all of the wheels that it had on hand at the time of the making of said contract and all of the wheels that it could possibly obtain from other sources; that plaintiff thereby lost the use and benefit of two-elevenths of the capacity of its said factory; that the fair value of the use of said factory, equipped as aforesaid, from January 1,

128     SUPREME COURT OF INDIANA,

Connersville Wagon Co. *v.* McFarlan Carriage Co.—166 Ind. 123.

1901, until July 1, 1901, was $875 per day, or a sum total of $58,500, two-elevenths of which it lost as aforesaid, or the sum of $10,636, and by reason of the defendant's not furnishing said wheels as aforesaid, according to the terms of said contract, as aforesaid, the plaintiff lost the use of its factory as aforesaid, to its damage $10,636 as aforesaid; that the plaintiff has performed all the conditions of said contract on its part. Plaintiff further avers that the price that it was to pay for the wheels as per said contract was at the time of entering into said contract the fair market value of the wheels of the character and grade therein contracted for; that by May 1, 1901, the price of wheels of the character and grade mentioned in said contract had increased in value as much as $1 per set, and has maintained said increased value at all times since said date; that the 3,554 ½ sets of wheels that the defendant has failed and refused to deliver as per its contract, as hereinbefore stated, is now, and has been at all times since May 1, 1901, worth $1 per set in excess of said contract price, and that by reason of the defendant's failing and refusing to furnish said 3,554 ½ sets of wheels the plaintiff has been damaged on that account in the sum of $3,554, all to plaintiff's damage in the sum of $14,190."

Under the "points-and-authorities" subdivision of appellant's brief, we find it stated that the contract was a *nudum pactum* as to the optional portion of said contract, and also that that provision was within the statute of frauds, as the contract, as executed by the parties, did not amount to an acceptance of said optional stipulation. These contentions are without merit. *Jordan* v. *Indianapolis Water Co.* (1902), 159 Ind. 337; 21 Am. and Eng. Ency. Law (2d ed.), 929. Under the contract appellee was entitled to order, from time to time up to November 15, 1901, such quantities of sets of wheels over and above 5,000 as it might need (within the maximum of 10,000 sets), and each order that it so lodged with appellant con-

NOVEMBER TERM, 1905.     129

Connersville Wagon Co. v. McFarlan Carriage Co.—166 Ind. 123.

stituted an acceptance *pro tanto*. Appellant's notice to appellee after 6,445 ½ sets had been delivered that it would not further perform the contract, placed it in a position where it was not entitled to any further notice of acceptance, and as to the undelivered wheels, appellee, under the allegations of the complaint, thereupon became entitled to recover the difference between the contract and the market price on such wheels.

It is claimed that the leading theory of the complaint is that there has been a loss of speculative and uncertain profits. We think that this is correct so far as any loss antedating July 1, 1901, is concerned. A casual reading of that part of the complaint relative to the delivered wheels might suggest that up to said date a recovery was sought for the loss of the use of the plant to the extent of two-elevenths of its capacity, but upon closer examination it will be perceived that the complaint involves the question as to the right to recover for contingent or unearned profits. Whether appellee would have been able to manufacture and sell seventy-five vehicles per day for the year, had it been able to get the wheels promptly, involves contingencies that even the efflux of time did not wholly settle. There were the questions as to whether the plant could be operated continually up to that capacity, whether the necessary stock, aside from wheels, could be obtained, whether a sufficient amount of labor could be had to perform the work, and whether appellee would find its customers prepared to buy the increased output when offered to them. It is true that the use of the plant is alleged to have been $875 per day, but as the extent of the loss (alleged to have been two-elevenths) depended wholly upon the outcome of the contingencies named, it is evident that the elements of doubt and uncertainty above mentioned are essential factors of the leading theory of the claim of damages.

We are unable to conclude, however, that the claims of damages are in anywise inconsistent; they relate to damages sustained at different times, and separate breaches are assigned concerning them. The complaint, as respects the claim for damages on account of the wheels which were not delivered, stated a cause of action, and the court did not err in overruling the demurrer thereto.

Appellant assigns as error the sustaining of a demurrer to its fourth paragraph of answer. By this paragraph it was sought to predicate a defense upon the provision of the contract making "unavoidable cause" an excuse for a failure to perform. Disregarding the conclusions of said paragraph, it is plain that the facts pleaded were not sufficient to bar the action. *Welles* v. *Castles* (1855), 3 Gray 323; *Central Line of Boats* v. *Lowe* (1873), 50 Ga. 509; *Reaves* v. *Waterman* (1843), 2 Speer 197, 42 Am. Dec. 364; *Fish* v. *Chapman* (1847), 2 Ga. 349; *Fowler* v. *Davenport* (1858), 21 Tex. 626; *Gordon* v. *Buchanan* (1833), 5 Yerg. *81.

Complaint is made of a number of rulings in admitting evidence which could only have been admissible in support of the damages claimed for delay in delivering wheels. As these rulings can only be defended on the ground that appellant was entitled to recover under said theory, we are of opinion that the questions thus presented may be settled by a consideration of the question as to whether appellee was entitled to recover for the losses in its business prior to July 1, 1901, as set forth in the complaint.

A person who would recover damages must show with that reasonable certainty required by law the nature and extent of his damages. *Wolcott, Johnson & Co.* v. *Mount* (1873), 36 N. J. L. 262, 13 Am. Rep. 438; *Leeds* v. *Metropolitan Gas-Light Co.* (1882), 90 N. Y. 26; *Forrest* v. *Buchanan* (1902), 203 Pa. St. 454,

53 Atl. 267; *Smitha* v. *Gentry* (1898), 20 Ky. Law 171, 45 S. W. 515, 42 L. R. A. 302; 1 Sutherland, Damages (3d ed.), §53; 1 Sedgwick, Damages (8th ed.), §§170, 171, Absolute certainty is not required. There are cases in which, the facts being shown, the reasonable deductions to be drawn therefrom must of necessity be left to the intelligence of the triers of fact. *Allison* v. *Chandler* (1863), 11 Mich. 542.

But the question here arises as to the right to recover a class of damages the investigation of which necessarily involves some elements of pure conjecture, notwithstanding the fact that a measure of damages for the breach can be found which would be substantial in its character and susceptible of being established with at least an approximation to accuracy.

In his authoritative work on the measure of damages, Mr. Sedgwick states: "Wherever there is an interference with, or withholding of property, or breach of contract, or commission of a tort, the gain prevented, if provable, may be recovered. As a general rule, the expected profits of a business can not be proved and therefore can not be recovered. They might have been made, and they might not." 1 Sedgwick, Damages (8th ed.), §174. In another section of the same work it is said: "A party who claims compensation for an injury done him must show, as part of his case, not only that he has suffered a loss on account of the injury, but also what is the amount of the loss; and the burden of proving both these things is upon him. He is to show, with that reasonable certainty required by law, just the amount of damages which should be allowed him as compensation; no damages can be recovered for an uncertain loss." 1 Sedgwick, Damages (8th ed.), §170. In the leading American case of *Griffin* v. *Colver* (1858), 16 N. Y. 489, 69 Am. Dec. 718, the facts involved were that there had been a failure to deliver a steam-engine, with boilers, etc., on a certain day, whereby the defendants lost

the use of certain machinery. They sought, by counter-claim, to recover lost profits, but the court, in holding that that was not the measure of damages, said: "It is a well-established rule of the common law that the damages to be recovered for a breach of contract must be shown with certainty, and not left to speculation or conjecture; and it is under this rule that profits are excluded from the estimate of damages in such cases, and not because there is anything in their nature which should *per se* prevent their allowance. Profits which would certainly have been realized but for the defendant's default are recoverable; those which are speculative or contingent are not." In the course of a carefully prepared article on the subject of unearned profits as an element of damages, the writer, Frederick Hulse, says: "Profits are always more or less contingent. They are usually to be worked out in the future, and can not be proved with absolute certainty. Men are often most sanguine concerning the successful conclusion of their business ventures, and can usually show on paper how large profits must be the result of their undertaking. Unfortunately, however, it is a matter of common occurrence that schemes which prudent, cautious and experienced business men have formulated with the utmost care fail in the accomplishment of the expected rewards. It is usually laid down, therefore, in both England and America, that speculative, contingent and uncertain profits can not be recovered as damages." 5 The Counsellor, 1. See, also, *Western Gravel Road Co.* v. *Cox* (1872), 39 Ind. 260; *Blair* v. *Kilpatrick* (1872), 40 Ind. 312; *Montgomery County, etc., Soc.* v. *Harwood* (1891), 126 Ind. 440, 10 L. R. A. 532; *Acme Cycle Co.* v. *Clarke* (1901), 157 Ind. 271; *Schooner Lively* (1812), 1 Gall. (U. S.) 315, Fed. Cas. No. 8,403; *Howard* v. *Stilwell, etc., Mfg. Co.* (1891), 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147, and cases cited; *Wolcott, Johnson & Co.* v. *Mount, supra; Cassidy* v. *Le Fevre* (1871), 45 N. Y. 562; *Fox* v.

NOVEMBER TERM, 1905.          133

Connersville Wagon Co. *v.* McFarlan Carriage Co.—166 Ind. 123.

*Harding* (1851), 7 Cush. 516; *Pennypacker* v. *Jones* (1884), 106 Pa. St. 237; *Brownell & Co.* v. *Chapman* (1892), 84 Iowa 504, 51 N. W. 249, 35 Am. St. 326; *Novelty Iron Works* v. *Capital City Oatmeal Co.* (1893), 88 Iowa 524, 55 N. W. 518; *Alamo Mills Co.* v. *Hercules Iron Co.* (1892), 1 Tex. Civ. App. 683, 22 S. W. 1097; 1 Sedgwick, Damages (8th ed.), §§113, 170, 174, 183, 194; 13 Cyc. Law and Proc., 49.

In *Western Gravel Road Co.* v. *Cox, supra,* where there was involved the sufficiency of a counterclaim based on the loss of tolls from the failure to complete a road, this court said: "The amount of tolls that would have been received could not have been ascertained with any degree of certainty, but must have been left to the merest conjecture. The amount would have depended upon the number of persons who might have traveled over it, the distance travelled by each, and the character of the vehicles and number of horses used, etc. All this is too vague and conjectural to form a proper basis for damages."

The case of *Acme Cycle Co.* v. *Clarke, supra,* presented in a clear-cut form the right to recover contingent profits. Dowling, J., delivering the opinion of the court, said: "The only damages alleged to have been sustained by the appellant consisted in the loss of future, contingent, speculative, and imaginary profits. The appellant asks us to assume that, if it had received from the appellee a piece of machinery for manufacturing a small, though essential, part of a complicated article consisting of many members, everything else required for the construction of that article could easily have been procured at reasonable prices, and without delay; that the appellant would have been provided with all necessary shops, and warehouses, and workmen; that customers would have been found for its increased product; and that a large profit would have been realized by it upon the sale of every bicycle. But all this is merely speculative, and the allegations of the counterclaim furnish

no basis upon which the damages, if any, sustained by the appellant can be calculated. It is settled that profits which are speculative and contingent can not be recovered."

In speaking of the general rule which disallows unearned profits for a breach of contract, clearness requires that the distinction should be pointed out between a suit for 9. a breach, where the complaining party seeks to recover the difference between the agreed price and the ascertainable value of performance, and a claim for damages based upon something which is purely hypothetical. See *Philadelphia, etc., R. Co.* v. *Howard* (1851), 13 How. 307, 14 L. Ed. 157; *Masterton* v. *Mayor, etc.* (1845), 7 Hill 61, 42 Am. Dec. 38; *Smitha* v. *Gentry, supra.* So it is important to distinguish a line of cases in this State, of which *City of Terre Haute* v. *Hudnut* (1887), 112 Ind. 542, is the most important, which have in them the element of the interruption of a business as the gravamen of the suit. No doubt there are instances in which there may be an inquiry into the injury to a business, viewed as a going concern. 1 Sedgwick, Damages (8th ed.), §§182, 183; 13 Cyc. Law and Proc., 49. But it will probably be perceived upon an examination of the cases which uphold the right to a recovery on the theory suggested that they involve some or all of the following elements: An injury which was the direct or natural result of the breach or wrong; an efflux of time making that capable of ascertainment which was wholly conjectural before; an absence of any other measure of damages which would cover the actual loss of the complaining party.

It was said in *Griffin* v. *Colver, supra:* "Where the amount of the damages may be estimated in a variety of ways, * * * the law * * * adopts that mode of estimating the damages which is most definite and certain."

The fact that the class of damages first claimed involves uncertainty must be regarded as very important in the circumstances of this case.    In the first place, if the business was interrupted, that result was consequential, rather than direct.    *Harper* v. *Miller* (1866), 27 Ind. 277; 1 Sedgwick, Damages (8th ed.), §153. We are led to this conclusion from the fact that ordinarily a breach of contract to furnish such merchandise as wagon wheels would not result in a loss of the use of a mill.    In the next place, it must be at least the *prima facie* intendment, in the absence of special circumstances, that the parties intended that the damages for the breach should be liquidated by the legal or ordinary standard.  1 Sutherland, Damages (3d ed.), §52.    And, finally, a measure of damages can in any event be applied which is substantial in its character and sufficient to cover all natural or proximate results of the breach.    Mr. Sutherland says:    "The law defines the scope of responsibility for consequences; beyond that they are supposed to cease or the injured party is presumed to counteract them by preventive measures. The legal scope is a reasonable one; in general it extends as far as the moral judgment and practical sense of mankind recognize responsibility in the domain of morals, and in those affairs of life which are not referred to the courts for regulation or adjustment.    The law defines it generally by the principle which limits the recovery of damages to those which naturally and proximately result from the act complained of; or, in other words, to those consequences of which the act complained of is the natural and proximate cause."  1 Sutherland, Damages (3d ed.), §13.

The ordinary measure of damages for a breach of contract to deliver goods is based on the difference between the contractual and the market price.    Here the allegation is that the goods could not be obtained in the market.    There are cases in which it has been declared that in such circumstances the actual loss is the

measure of damages, but it is said by Mr. Sedgwick concerning the cases to that effect that the price fixed in a sub-contract entered into by the complaining party on the strength of the principal contract may be regarded, where the price is not unreasonable, as some evidence of a value which can not be tested by a market price. 2 Sedgwick, Damages (8th ed.), §740. This may perhaps be a proper view to take of the question, viewed as a matter of evidence, but we are of opinion, nevertheless, as the English cases hold, that in the absence of special circumstances justifying the conclusion that the party sued assumed a wider responsibility, he is held only to respond for whatever may be the difference between the contract price and the real value of the goods. *Borries* v. *Hutchinson* (1865), 18 C. B. N. S. 445, 465; *Elbinger Actien-Gesellschafft* v. *Armstrong* (1874), L. R. 9 Q. B. 473; *Grebert-Borgnis* v. *Nugent* (1885), 15 Q. B. D. 85.

There may, in some instances, under the principle of *Hadley* v. *Baxendale* (1854), 9 Exch. 341, which occupies such a unique place in the law of special damages as applied to contracts, be a recovery for something more than direct damages, at least where the evidence warrants the conclusion that the contract was to some extent based on the special circumstances out of which the injury arose. 1 Sedgwick, Damages (8th ed.), §157 *et seq.; Acme Cycle Co.* v. *Clarke, supra.* Whether, by its complaint, appellee brought itself within this rule we shall not inquire. It is enough to condemn the theory of damages now in question to state that even if appellee were authorized to recover such special damages, the damages should have been assessed on the reasonable value of the use, and not on the basis of a possible loss of profits. It was said in *Wolcott, Johnson & Co.* v. *Mount* (1873), 36 N. J. L. 262, 271, 13 Am. Rep. 438: "It must not be supposed that under the principle of *Hadley* v. *Baxendale* [1854], 9 Exch. 341, mere speculative profits, such as might be con-

NOVEMBER TERM, 1905. 137

Connersville Wagon Co. *v.* McFarlan Carriage Co.—166 Ind. 123.

jectured to have been the probable results of an adventure which was defeated by the breach of the contract sued on, the gains from which are entirely conjectural, with respect to which no means exist of ascertaining, even approximately, the probable results, can, under any circumstances, be brought within the range of damages recoverable. The cardinal principle in relation to the damages to be compensated for on the breach of a contract, that the plaintiff must establish the quantum of his loss by evidence from which the jury will be able to estimate the extent of his injury, will exclude all such elements of injury as are incapable of being ascertained by the usual rules of evidence to a reasonable degree of certainty." Both because of the uncertainty of future profits and because the risks of the business should rest upon the owner thereof, the value of the use should be regarded as the basis for a recovery, where a case is made for an allowance of special damages growing out of a deprivation of the use of property. *New York, etc., Co.* v. *Fraser* (1889), 130 U. S. 611, 9 Sup. Ct. 665, 32 L. Ed. 1031; *Howard* v. *Stillwell, etc., Mfg. Co.* (1891), 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147; *Griffin* v. *Colver* (1858), 16 N. Y. 489, 69 Am. Dec. 718; *Cassidy* v. *Le Fevre* (1871), 45 N. Y. 562; *Brownell & Co.* v. *Chapman* (1892), 84 Iowa 504, 51 N. W. 249, 35 Am. St. 326; *Novelty Iron Works* v. *Capital City Oatmeal Co.* (1893), 88 Iowa 524, 55 N. W. 518; *Pennypacker* v. *Jones* (1884), 106 Pa. St. 237, 242. As was said by Green, J., in the case last cited: "It was no part of this contract that the plaintiffs should make profits, or even have the opportunity of doing so, by carrying on a business with the machinery which the defendants agreed to erect. It is not like the sale of chattels or of land, where the difference between the contract value and the actual or market value of the property sold represents directly and immediately the measure of the party's loss or gain in the transaction. There the possible profit is the very object of the contract, and is necessarily

in the contemplation of the parties. But when a machinist furnishes machinery to a mill owner it is no part of his engagement that a profitable business shall be carried on with the machinery furnished. Of course if it is defective he is responsible for the damage resulting directly from such defect; but that is a very different thing from the uncertain, remote and speculative profits which may or may not be made in the business to be done."

It is our conclusion that there was error in admitting evidence in support of the theory of losses occasioned to the business of appellee, as outlined in its complaint.

13.    The court below stated in the finding that it was based on the difference between the contract and the market price of the sets of wheels not delivered. It is contended that this makes the rulings on the evidence which are complained of moot questions. As the finding was general, we are not authorized to consider the statement therein contained as to the basis on which the damages were assessed. *Jacobs* v. *State* (1890), 127 Ind. 77. See, also, *Terre Haute, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 438; *Muncie Pulp Co.* v. *Davis* (1904), 162 Ind. 558.

Judgment reversed, and a new trial ordered.