BLAFFER & FARISH et al. v. GULF PIPE LINE CO.     (No. 7791.)

(Court of Civil Appeals of Texas.     Galveston.
Dec. 17, 1919.)

1. SALES ☞71(5)—AGREEMENT FOR SALE OF OIL GAVE PURCHASER OPTION TO TAKE EXCESS OIL AT SAME PRICE.

A contract to purchase oil at a certain price per barrel, buyer not being obligated to take more than 2,000 gallons per day, *held* to give buyer option to take the total output of the seller's oil well at the specified price.

2. CONTRACTS ☞59 — OPTION CONNECTED WITH AGREEMENT SUPPORTED BY SUFFICIENT CONSIDERATION.

Where, in a contract supported by a sufficient consideration, an option is given to one of the parties, the option is valid and enforceable, though there is no independent or specific consideration therefor.

3. SALES ☞150(1) — OPTION TO PURCHASE SUPPORTED BY CONSIDERATION NOT AFFECTED BY REFUSAL TO DELIVER.

Where buyer of oil agreed to take 2,000 gallons of oil per day, but contract gave him the option of purchasing all oil produced by the seller in excess of such amount at the same price, the seller could not, by refusing to deliver the oil produced in excess of the 2,000 gallons, affect the right of the purchaser to have such excess oil at the specified price.

Appeal from District Court, Harris County; B. F. Louis, Special Judge.

Suit by Blaffer & Farish and another against the Gulf Pipe Line Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

L. A. Carlton and Otis Meredith, both of Houston, for appellants.

D. Edw. Greer, of Houston, for appellee.

LANE, J. This is a suit brought by appellants, Blaffer & Farish and the Paraffine Oil Company, a corporation, against the Gulf Pipe Line Company, a corporation, to recover 40 cents per barrel on 17,627.82 barrels of oil, designated by all parties as excess oil, which was delivered to the defendant Gulf Pipe Line Company under certain contracts and agreements existing between it and the plaintiffs. The causes of action of the two plaintiffs were separate causes of action, but, as they are so identical that a determination of one determines the controversy concerning each, it was agreed by all parties that the plaintiffs might bring their suits jointly. The cause was tried without a jury upon an agreed statement of facts, which is in substance as follows:

On the 30th day of July, 1915, appellants Blaffer & Farish, at Houston, Tex., wrote Harry C. Hansen, agent for the appellee Gulf Pipe Line Company, at Beaumont, Tex., as follows:

"Your letter of the 29th inst. in reference to oil contract on Paraffine 40 acres, received. We are willing to sell Blaffer & Farish's one-third of same for nine months from, say August 1st, which will be about six months' production, at the price of 60 cents per barrel. I was talking to Mr. Weis and it is his idea, and I agreed with him, that you ought to give the lease a little larger limit on production, because we would like to have you take care of any production we might get, and it is possible that we will get three or four thousand barrel well. Mr. Weis will see you to-morrow about same."

On July 31, 1915, Hansen, for appellee, replied:

"I have your letter of the 30th, and hand you herewith oil purchase contract covering your one-third interest in the Paraffine 40 acres at Humble. Mr. Wiess talked to me to-day about the maximum, but I am unwilling to make this for more than 1,000 barrels, and Mr. Wiess has decided to accept my offer. Therefore, assume you will desire to do likewise. Kindly sign the attached contract and return original copy for my files."

On the 31st day of July, 1915, after the passage of the above letters, the appellants Blaffer & Farish and the appellee Gulf Pipe Line Company entered into the following written contract:

"Gulf Pipe Line Company Oil Purchase Contract.

"Contract No. ——.    Division Order No. ——.

"This evidences the sale by Blaffer & Farish, hereinafter called the 'seller,' to the Gulf Pipe Line Company, of Beaumont, Texas, hereinafter called the 'company,' of certain crude petroleum as herein designated, being our portion, to-wit, one-third of the total production from wells one and up on the Paraffine forty acres, Humble, Harris Co., Texas, for the period beginning August 1, 1915, at 7 o'clock a. m., and ending April 1, 1916, at 7 o'clock a. m. The terms and conditions of this sale are as follows:

"Our portion of all the petroleum oil produced from said wells during said period of time shall be by the seller thoroughly settled and put in marketable condition, and run into tanks connected with the pipe lines of the company, or to be connected therewith at its expense. In ascertaining the gauge tank measurements such deduction shall be made on account of sediment and impurities which may be held in suspense and for excess temperature as are provided for by the existing rules and regulations of the Gulf Pipe Line Company.

"The company is to receive from said tanks into its pipe lines all the quantity of oil as thus ascertained: Provided, however, that it shall not be required to receive or purchase any oil heavier than 15 degrees Beaumé, but may do so at its option; nor more than one thousand barrels per day, which is the maximum quantity that the company is required to take under this purchase per day during the period of this contract. The company is to have the right under this contract at the time of or prior to any settlement and payment for oil theretofore received to purchase at the price herein named all excess or any part of such excess over said designated quantity of the oil which the company may receive into its pipe lines as also any oil heavier than 15 degrees Beaumé, all such excess and all heavier oil which the company may receive into its lines and not purchase is to be run to the credit of the seller as a regular pipe line run as directed in the division order, and subject to the usual rules, regulations, and charges of the company.

"It is further understood that run tickets for oil from said wells are to be made as per division order on file with the 'company' and that payment for oil purchased by the 'company' hereunder is to be made to the 'seller,'

at Beaumont, Texas, and that the price to be paid by the company is sixty cents per barrel of forty-two gallons each. Settlements are to be made for oil purchased hereunder when requested by the seller from time to time, not oftener than once in each seven days' period.

"The company shall not be liable for any delay in the receipt of oil under this contract or into its pipe lines caused by strikes of employés, accidents or injury to its pipe lines or pumping machinery or other equipment, or by any cause which could not reasonably be foreseen or avoided, and in any such case the company shall be relieved from any duty to receive oil until the expiration of a reasonable time within which to do so after the termination of such strike or repairment of such injury or removal of other causes preventing such receipt.

"The seller agrees, in case of any adverse claim of title, to furnish to the company, upon demand, an indemnity bond executed by a licensed surety company, against such adverse claim or claims, and unless the seller does so the company may retain oil received into its lines or the proceeds of the sale thereof until the dispute as to ownership is settled, and that this contract shall operate between its successors and assigns of both parties hereto and be binding upon them and each of them.

"Executed in duplicate, Beaumont, Texas, this 31st day of July, 1915.

"Blaffer & Farish,
"By W. S. Farish.
"Gulf Pipe Line Company,
"By Harry C. Hansen."

On the same day the appellant Paraffine Oil Company and appellee also entered into a contract identical in its terms with the contract set out above; the only difference in the two being the difference in the names of the sellers of the oil. On the date of the execution of the contracts mentioned, each of the plaintiffs, appellants here, owned a one-third interest in the Paraffine 40-acre tract of land, described in the contracts. At the time of the execution of the contracts the appellants and the party owning the other one-third of the land contemplated the development of same for oil. Oil was found on the land, and so long as the one-third part thereof belonging to each of the appellants did not amount to more than 1,000 barrels per day said oil was run into the pipe line of appellee, as provided by the contracts, and was taken and paid for by appellee at the rate of 60 cents per barrel, as per the contracts. On or about the 1st day of March, 1916, the part of the production coming to each of the appellants began to amount to more than 1,000 barrels per day. As soon as it was discovered that the production for each of said parties exceeded 1,000 barrels per day, a controversy arose between the plaintiffs, on the one part, and the Gulf Pipe Line Company, on the other part, as to whether the plaintiffs were bound by the contract to run into the line of and sell to the Gulf Pipe Line Company all of the oil re-

spectively produced from their part of the property and owned by them, although same might amount to more than 1,000 barrels per day each.

The plaintiffs contended that they were only compelled to run into the line and sell to the Gulf Pipe Line Company 1,000 barrels per day each from that part of the oil produced from the property, respectively owned by them. On the other hand, the Gulf Pipe Line Company contended that it was not only entitled to have all of the oil of each party run into its line, but that it had the right and option to take and pay for the whole of same at the price of 60 cents per barrel, be it more or less than 1,000 barrels per day each, and notified plaintiff that it desired and demanded that all of the production of plaintiffs from said land should be run into its line, and notified plaintiffs that it had elected to purchase all of said production at the price named in the contracts.

Plaintiffs refused to acquiesce in this construction of the contract, and refused to run into the line and sell to defendant, as demanded, the said excess oil. Thereupon the said parties, without prejudice to the rights of either, entered into a contract of date March 9, 1916, by which it was agreed that the whole of the production of each of the plaintiffs should be run into the line; that the defendant Gulf Pipe Line Company should take and pay for 1,000 barrels per day each from the respective parties; that it, the defendant, should also take and pay for at the contract price named, the excess over 1,000 barrels per day so owned and going to the respective parties.

At the time of the controversy, and at the time the excess oil was run into the pipe line of the appellee, oil was worth $1 per barrel. The whole of plaintiffs' portion of the oil was run into defendant's line as produced, and was taken and paid for by defendant at the price of 60 cents per barrel. During the period of the contracts the excess oil (that is, the excess over 1,000 barrels per day each), run into the line, taken and paid for by the Gulf Pipe Line Company at the rate of 60 cents per barrel, amounted to 17,627.82 barrels. One-half part thereof belonged to the plaintiff Paraffine Oil Company. The 17,627.82 barrels, at 40 cents per barrel, amounts to $7,051.13. If the plaintiffs recover herein, Blaffer & Farish are entitled to the one-half part of this amount, and the Paraffine Oil Company the other one-half part thereof.

In all other respects than above indicated the contract has been complied with by both the plaintiffs and defendant, and unless the plaintiffs are entitled to recover the 40 cents per barrel for the excess oil so run into the line and appropriated by the defendant, they are entitled to nothing. While the plaintiffs and the defendant have been unable to agree as to a proper interpretation of their contractual relations, and there is a bona fide issue between them, defendant consents that this suit may be brought in the manner and form that it is brought, and no technical objections will be interposed on account of a misjoinder of plaintiffs.

The two contracts—that is, the one with Blaffer & Farish, and with the Paraffine Oil Company—bear the same date, were written on the same form, and are identical in their terms. Upon this agreed statement of facts the trial court rendered judgment decreeing that the plaintiffs, Blaffer & Farish and Paraffine Oil Company, take nothing by their suit, and that the defendant Gulf Pipe Line Company go hence without day, etc. The plaintiffs have appealed, and jointly present this appeal. They have also joined in the brief for appellants filed in this court, and the assignments presented are applicable to both appellants.

By the first and second assignments it is insisted that the effect of the trial court's finding was that the defendant, Gulf Pipe Line Company, had the right and privilege to compel the running of the excess oil into its pipe line, and that it had the option and privilege to buy same at the contract price of 60 cents per barrel, and consequently, under the facts agreed to, it owed plaintiff nothing; that upon such findings appellants were denied a recovery, and that such findings and acts of the court constitute reversible error, for the reason that the undisputed evidence shows that plaintiffs were entitled to recover. And by the third assignment it is insisted that the outright purchase by the defendant from each of plaintiffs of 1,000 barrels of oil per day was so separable from the asserted privilege to buy any excess over and above that amount per day as that this absolute obligation to buy would not be a consideration for the privilege claimed; therefore the court erred in failing and refusing to render judgment in favor of plaintiffs against the defendant for the excess at the price and upon the terms provided in the stipulation.

[1, 2] We think that neither of these contentions should be sustained. We are of opinion that the contracts between the parties constitute entire contracts, and that the considerations recited support, not only the sale of the 1,000 barrels of oil by each of the plaintiffs, but as well the right of defendant to demand the placing of the excess oil in the settling tank to which defendant had attached its pipe line, and the right of defendant to run said excess oil into its pipe line, and thereafter, at the time of or prior to any settlement and payment for oil theretofore received, to purchase the same by paying therefor the price stipulated in the contract. Where in a contract supported by a sufficient consideration an option is given to one of the parties, the option is valid and

enforceable, though there is no independent or specific consideration for the option. We think that these conclusions reached by us are supported by the following authorities: Griffin v. Bell, 202 S. W. 1034; Allegheny Oil Co. v. Snyder, 106 Fed. 764, 45 C. C. A. 604; Connersville Wagon Co. v. McFarlan Carriage Works, 166 Ind. 123, 76 N. E. 294, 3 L. R. A. (N. S.) 709; Jordan v. Indianapolis Water Co., 159 Ind. 337, 64 N. E. 680; Kruegel v. Berry, 75 Tex. 230, 9 S. W. 863; Brink v. Mitchell, 135 Wis. 416, 116 N. W. 16; DeRutte v. Muldrow, 16 Cal. 505; Perry v. Paschal, 103 Ga. 134, 29 S. E. 703.

To give the contract under consideration the construction which we think it should receive, it means that the appellee, Gulf Pipe Line Company, at its option, had the right to receive into its pipe line any and all oil produced by appellants from the 40 acres of land described, and also at its option had the right, at the time of or prior to any settlement and payment for oil theretofore received, to purchase any oil it might run into its pipe line in excess of the 2,000 barrels per day which it had obligated and bound itself to purchase, at 60 cents per barrel, the price stipulated in the contract.

[3] If we are correct in holding that there was a consideration passed from appellee to appellants for the option to buy the excess oil, then it is manifest that, since appellants had for a valuable consideration sold appellee the right to purchase such excess oil, they should not be permitted to take advantage of their refusal to deliver such excess oil into the settlment tank to which appellee had connected its pipe line, by reason of the terms of the contract, and in this manner bring about a condition rendering it impossible for appellee to avail itself of the option to purchase the excess oil, for which it had paid a valuable consideration.

Having reached the conclusion that no judgment other than the one rendered could have been rendered under the agreed statement of facts, such judgment is in all things affirmed.

Affirmed.