MAY TERM, 1919.                401

J. P. Smith Shoe Co. *v.* Curme-Feltman Shoe Co.—71 Ind. App. 401.

# J. P. Smith Shoe Company *v.* Curme-Feltman Shoe Company.

[No. 9,458. Filed January 11, 1918. Rehearing denied June 28, 1918. Transfer denied November 21, 1919.]

1. Sales.—*Actions for Breach of Contract.—Measure of Damages.*—Ordinarily, the amount recoverable upon breach of an executory contract of sale by failure to deliver the articles bargained for, of the kind, quality or quantity designated, at the time and place for delivery, is the difference between the contract price and the market value at the time and place for delivery. p. 419.

2. Sales.—*Actions for Breach of Contract.—Damages.—Profits.*—Generally, the consideration of future profits, upon the question of damages for the breach of an executory contract of sale by failure to deliver, is excluded, because such profits are uncertain of realization, are contingent upon things collateral to the contract, and cannot be said to have been within the contemplation of the parties when the contract was made. p. 422.

3. Sales.—*Actions for Breach of Contract.—Damages.—Profits.—When Admissible.*—Where future profits may be ascertained with reasonable certainty and the loss of them is a proximate result of a breach of a contract of sale by failure to deliver, or where the facts show with reasonable certainty that such future profits were contemplated by the parties when the contract was entered into, they may properly be considered in estimating the damages. p. 422.

4. Sales.—*Actions for Breach of Contract.—Damages.—Profits.—Measure of Damages.*—While, in some cases, the amount of future profits lost by failure to deliver goods under a contract of sale may afford the most satisfactory means of ascertaining the actual damages occasioned by such breach, such profits are not to be taken for the measure of damages, but are only to be considered in connection with the other evidence on the question in estimating the damages that naturally and proximately resulted from the breach of contract. p. 422.

5. Sales.—*Action for Breach of Contract.—Damages.—Profits.—Correctness of Award.*—Where, upon breach of an executory contract of sale by failure to deliver, it happens that the actual damages sustained do not substantially differ from the aggre-

gate of lost profits, the amount awarded will not necessarily be erroneous or excessive because of such fact. p. 423.

6. SALES.—*Actions for Breach of Contract.—Goods Bought for Resale in Established Trade.—Profits.*—Where a vendor of shoes to be manufactured according to specifications knew that the buyer had an established trade on such shoes at certain prices, such knowledge supplied the reasonable certainty of profits requisite to their consideration as an element of damages for the breach of the contract of sale by failure to deliver. p. 428.

7. SALES.—*Actions for Breach of Contract.—Goods Unobtainable Elsewhere.—Measure of Damages.—Actual Loss.—Retail Price.*—Where the manufacturer broke a contract for the sale of shoes to a retailer at a time when there was no market at which, or dealer from whom, shoes of the particular brand, make and quality could be obtained, the actual loss was the measure of damages, and the price at which, in the due course of business, they could have been sold by the purchaser may be considered in assessing such damages. p. 435.

8. SALES.—*Implied Warranty.—Acceptance.—Caveat Emptor.—Action for Price.—Counterclaim.*—Under a contract for the manufacture and sale of shoes, to be different from other shoes manufactured by the seller, to have the buyer's name stamped thereon and to be of special design, pattern and grade for sale to customers acquainted with such shoes by previous purchases, all of which was known to both parties, there was an implied warranty that such shoes would be reasonably suited for such trade, and where there were defects therein that were not known to the buyer and would not have been ascertained by ordinary inspection, the buyer was not bound to return the shoes, but could keep them, and if sued for the purchase price set up his damages by way of counterclaim, since in such a case the principle of *caveat emptor* is not applicable. p. 436.

9. TRIAL.—*Findings of Fact and Conclusions of Law.—Sales.—Actions for Breach of Contract.—Damages.—Profits.*—Conclusions of law that do not show that gross retail profits, as such, were taken as the measure of damages, without due consideration of other facts that might materially affect the question of damages, and which, in an action for breach for failure to deliver goods under an executory contract of sale, are based upon findings of the actual value of the goods, as ordered, in the amount or equivalent of the retail price, and of other facts showing that the actual damage sustained was the difference between the value of the goods at the time and place for delivery and the contract price, are not erroneous, in view of the right of a vendee to hold his vendor liable for the increased cost of pro-

J. P. Smith Shoe Co. *v.* Curme-Feltman Shoe Co.—71 Ind. App. 401.

curing goods elsewhere in case of the failure to deliver articles ordered for a particular purpose known to the vendor. p. 437.

10. EVIDENCE.—*Sales.*—*Actions for Breach of Contract.*—*Evidence of Calls for Goods by Customers.*—Where, in an action on an executory contract for the sale of goods, for breach by failure to deliver, the lost profits of the buyer are proper for consideration on the question of damages, evidence that there was a demand for the goods ordered is admissible. p. 439.

11. APPEAL.—*Sales.*—*Actions on Breach of Contract.*—*Evidence.*—*Private Writings.*—*Res Gestae.*—It was error to exclude records kept by the vendor in the regular course of its business while engaged in manufacturing shoes, and showing all the details of the stock, manufacture and shipment thereof, for the non-delivery of part of the order for which, and for the delivery of others in a defective condition, the buyer has set up a counterclaim for damages, such records being part of the *res gestae* and competent evidence on the issue of defects in the shoes ascribed in the counterclaim to faulty manufacture. p. 439.

12. APPEAL.—*Error*—*Exclusion of Evidence.*—*Not Shown Harmless.*—*Presumption.*—Where, from the record, the Appellate Court is unable to say that an error was harmless in excluding evidence which related to a material issuable fact, found against the complaining party, such error is presumed to have been harmful. p. 441.

From Marion Superior Court (93,610); *W. W. Thornton,* Judge.

Action by the J. P. Smith Shoe Company against the Curme-Feltman Shoe Company, wherein defendant filed a counterclaim. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Clarence E. Weir, Charles P. Ritter, Charles W. Richards, J. J. Cermak* and *McEwin, Weissenbach & Schrimski,* for appellant.

*Leander J. Monks, John F. Robbins, Henry C. Starr, James P. Goodrich* and *Carl H. Weyl,* for appellee.

FELT, J.—This suit was instituted by appellant to recover a balance due for shoes alleged to have been

404　　APPELLATE COURT OF INDIANA,

J. P. Smith Shoe Co. *v.* Curme-Feltman Shoe Co.—71 Ind. App. 401.

sold and delivered to appellee. There are two paragraphs of complaint. The first counts upon shoes sold and delivered. The second is substantially the same as the first, except it avers a parol contract for the purchase of certain shoes by appellee from appellant with certain modifications thereof during the period of its fulfillment.

The controverted issues arose upon appellees' counterclaim filed in two paragraphs. The counterclaim sought to recoup by way of damages (1) for defective shoes which were unsalable and were by reason thereof returned to appellant; (2) for shoes appellant failed to manufacture and deliver according to the contract of purchase; (3) loss on account of sales and replacements of defective shoes; (4) on account of loss occasioned by necessary sales of defective shoes below the regular retail price; (5) for loss occasioned by sales of mismated shoes and necessary replacements by appellee; (6) for loss on account of defective shoes unsold and still in possession of appellee at the time of the trial.

Upon request the court made a special finding of facts and stated its conclusions of law thereon, which were in favor of appellee, and awarded net damages in its favor on the counterclaim in the sum of $1,021.93.

Appellant's motion for a new trial was overruled, and judgment was rendered on the conclusions of law for the aforesaid amount and costs of suit.

Appellant has assigned as error each of the several conclusions of law and the overruling of its motion for a new trial.

The finding of facts is very long. We therefore set out its substance, and such portions thereof as will

enable us to apprehend and decide the questions presented by the briefs.

The findings show that appellant was, and for many years had been, a manufacturer of shoes, in the city of Chicago, which it sold to retail dealers; that appellee is a corporation engaged in the business of selling shoes at retail in its several stores located in the cities of Indianapolis, Richmond and Muncie, Indiana; that it has been engaged in such business continuously since March, 1911, during all of which time it had been a customer of appellant, and had purchased from it large quantities of both high shoes and Oxfords of the kinds and grades described in the complaint, which shoes it had sold to its customers, and had thereby built up an extensive trade in such shoes and created a demand for them among the customers of its several retail stores aforesaid, prior to and during the year 1913; that the shoes so purchased and used by appellee were bought on orders given to appellant's agent, W. O. Holloway, at appellee's store in the city of Indianapolis, Indiana, and were so sold to appellee to be resold by it in the usual course of retail trade to its customers of its several stores aforesaid, all of which was known to appellant at all times during the period covered by the transactions aforesaid up to and including the transactions in the fall of 1912 and subsequently thereto; that the agent of appellant called upon appellee on September 17 and November 22, 1912, to sell shoes on orders for future delivery; that appellant was then engaged in the construction of a new factory, and, fearing delay in the delivery of shoes purchased, appellee refused to place any orders therefor with appellant, except upon the condition that any shoes ordered should be

manufactured and made ready for shipment to appellee before removal to the new factory aforesaid, to which condition appellant expressly agreed; that, in pursuance of such agreement, on September 17, 1912, appellee ordered from appellant 2,770 pairs of Oxford shoes to be shipped February 1, 1913, to its several stores as indicated; that on November 22, 1912, appellee bought through appellant's agent aforesaid 1,320 pairs of high shoes to be ready for shipment by February 15, 1913, and 846 pairs of high shoes known and designated as "tramp last"; that the purchase price of all of said shoes was made f. o. b. Chicago, as follows:

> Oxfords $2.75 per pair except 103 pairs, which were $2.60 per pair.
> High shoes, not tramp last, per pair: 25 pairs, $3.25; 714 pairs, $2.85; 578 pairs, $3.35; 846 pairs, tramp last, $2.85.

Appellee also bought from appellant certain other shoes designated "stock shoes," for which it agreed to pay the sum of $465; that all the indebtedness due for shoes purchased as aforesaid has been paid, except the sum of $3,283.27, which amount is due and unpaid, and is subject to all lawful amounts arising out of appellees' counterclaim filed herein; "that it was agreed by plaintiff and defendant, as a part of said orders and sales of shoes, that all shoes so ordered by defendant should be manufactured by plaintiff in special designs and patterns for defendant, different from all other shoes manufactured by plaintiff, and when so manufactured they should have the name of defendant stamped therein and thereon by plaintiff; and that all such shoes so manufactured

under such orders were accordingly so made up in such special designs and patterns, and were so stamped with the name of defendant.

"That at the time of soliciting the orders for shoes by plaintiff from defendant, and on the agreement of plaintiff so to sell such shoes to defendant pursuant thereto, plaintiff knew and understood that said shoes were being purchased by defendant to be resold to its customers in the usual course of its retail trade at its three said several stores, and that there was at that time an extensive demand there for them among defendant's customers, and that at the time of the giving of said orders by defendant, and of the agreement of plaintiff so to manufacture and sell said shoes to defendant, it was within the contemplation of the parties that said shoes should be sold by defendant at a retailer's profit, as hereinafter set forth, at its said three places of business." That appellee was at all times ready and willing to perform its part of said contracts of purchase, and has fully performed the same except as prevented by the failures or occasioned by the default of appellant in relation thereto.

Appellant failed and neglected to manufacture and ship to appellee said Oxford shoes by February 1, 1913, in accordance with its contract, though it could have done so, but it did make shipments thereunder as follows:

"To defendant at its said Indianapolis store:

| March 14, 1913 | 183 pairs |
| " 17, " | 97 " |
| " 19, " | 214 " |
| " 21, " | 103 " |
| " 24, " | 139 " |

April    2,    "    ....................    199    "
  "      7,    "    ....................    111    "
  "     11,    "    ....................     85    "
  "     18,    "    ....................    127    "
  "     20,    "    ....................    124    "
May    13,    "    ....................    108    "

                    A total of........1,490 pairs.

To the defendant at its Richmond store:
March 17, 1913....................     44 pairs
  "     19,    "    ....................    125    "
  "     21,    "    ....................     25    "
  "     24,    "    ....................     20    "
April    2,    "    ....................     77    "
  "      7,    "    ....................     33    "
  "     11,    "    ....................     39    "
  "     16,    "    ....................    114    "
  "     21,    "    ....................     98    "
  "     25,    "    ....................     71    "
  "     29,    "    ....................     24    "
May     2,    "    ....................     75    "
  "     13,    "    ....................     24    "
  "     19,    "    ....................     33    "

                    A total of........ 802 pairs.

To defendant at its Muncie store:
March 17, 1913....................    101 pairs
  "     19,    "    ....................     21    "
  "     21,    "    ....................     52    "
April    2,    "    ....................    109    "
  "      7,    "    ....................     62    "
  "     11,    "    ....................    133    "

                    A total of........ 478 pairs."

(11) That, without any fault of appellee, appellant failed to manufacture and ship to it, or to have ready for shipment on call as per contract, by February 15, 1913, said 1,320 pairs of high shoes, not tramp last, though there was ample time to have done so; that appellee frequently demanded the delivery of said shoes according to contract, and after February 15, 1913, urged delivery thereof at its several stores aforesaid, but was only able to receive shipments as follows:

To defendant's said Indianapolis store:

| | | |
|---|---|---|
| March 21, 1913 | 2 | pairs |
| " 24, " | 42 | " |
| April 2, " | 202 | " |
| " 7, " | 57 | " |
| " 11, " | 100 | " |
| " 18, " | 14 | " |
| " 29, " | 12 | " |
| A total of | 429 | " |

To defendant's Richmond store:

| | | |
|---|---|---|
| March 21, 1913 | 18 | pairs |
| " 24, " | 66 | " |
| April 2, " | 72 | " |
| " 24, " | 24 | " |
| " 25, " | 24 | " |
| " 29, " | 18 | " |
| A total of | 222 | " |

To defendant's Muncie store:

| | | |
|---|---|---|
| April 2, 1913 | 36 | pairs |
| " 7, " | 18 | " |
| " 29, " | 24 | " |
| A total of | 78 | " |

410    APPELLATE COURT OF INDIANA,

J. P. Smith Shoe Co. v. Curme-Feltman Shoe Co.—71 Ind. App. 401.

That of the 1,320 pairs of shoes aforesaid appellant shipped to appellee only 729 pairs in the lots at the dates and places above indicated, and wholly failed to deliver to appellee 591 pairs thereof at any time or place, though appellee frequently demanded and urged shipment thereof; that on March 24 appellee was notified by appellant that said 591 pairs of shoes had not been manufactured and could not be manufactured and made ready for shipment before June 1, 1913, and asked if appellee desired to have them made for delivery at that time; that thereupon, owing to the delay and lateness of the proposed delivery, and the improbability of being able to sell the same, appellee directed the cancellation of that portion of the order, and the same were never delivered; that, if said 591 pairs of high shoes had been shipped to appellee according to contract, the cost of freight and drayage thereon would not have exceeded $9; that the value of the aforesaid 2,770 pairs of Oxford shoes in the Spring and Summer of 1913, if manufactured and delivered in accordance with the contract therefor, at appellee's several places of business aforesaid, was $4 per pair, or $11,080; that there was a heavy demand for said shoes at the stores aforesaid, beginning in February and extending into the summer of 1913; that, if said shoes had been shipped by February 1, 1913, or within a reasonable time thereafter, appellee could and would have sold all of them at $4 per pair.

(14)    The finding sets out in detail facts to show that twenty pairs of Oxford shoes were mismated, and the fact was not known to appellant when the same were received, and that 350 pairs were so poor in quality of material and in workmanship as to be

unsalable, and the same were returned to and received by appellant, and appellee was credited therefor on its account; that, if said 350 pairs of shoes had been of the quality and finish contracted for, appellee could and would have sold all of them for $4 per pair during the Spring and Summer of 1913; that of the Oxford shoes aforesaid, 1,031 pairs were not properly dried and seasoned on the lasts, were defective, and when sold became unfit for wear in a few days; (15) that 160 pairs of such shoes were returned to appellee by customers, and, on account of such defects, appellee replaced them with other shoes of the value of $4 per pair, without receiving any additional compensation therefor; that because of such defects, appellee was compelled to sell said shoes at a reduced price, below $4, viz.:

| | | |
|---|---|---|
| 125 pairs at | $1.95 | per pair |
| 175 " " | 1.45 | " " |
| 350 " " | 1.00 | " " |

That, if the same had been delivered to appellee in good condition, it could have sold the 650 pairs aforesaid for $4 per pair; that appellant was compelled to and did replace twenty pairs of mismated Oxford shoes aforesaid with other shoes of the value of $4 per pair; (15) that appellee was unable to sell 221 pairs of said defective Oxford shoes, has them on hand, and they are of the value of fifty cents per pair, or $110.50.

That, if said 1,320 pairs of high shoes so ordered as aforesaid had been delivered at the times specified, and had been of the designated grade and quality, 717 pairs thereof, at appellee's stores aforesaid, would have been of the value of $4 per pair during the sea-

son of 1913, or $2,868, and 603 pairs, under the same conditions, would have been of the value of $5 per pair, or $3,015, and appellee could and would have sold all of them for the prices aforesaid during the proper season of 1913.

(18) That of the 729 pairs of high shoes, and also the 591 pairs aforesaid, part were $4 and part $5 per pair at retail in appellee's stores; that of the 729 pairs aforesaid ninety pairs of those priced at $4 and 100 pairs of those priced at $5 were defective and ill fitting when delivered to appellee, and, because of such defective condition, during the season of 1913, appellee was compelled to and did sell fifty pairs of said $4 shoes at $2.95 per pair, which amount was the fair and reasonable value, also 100 pairs of said $5 shoes at $3.95 per pair, which was the fair and reasonable value thereof; (19) that of said ninety pairs appellee sold forty pairs at $4 per pair, and, because of the defects aforesaid, all of them were returned to appellee in a few days after sale, in a wrinkled, out-of-shape condition, wholly unfit for use; that because thereof appellee was compelled to and did replace them with forty pairs of other shoes of the value of $4 per pair, or $160; (19) that five pairs of such shoes were mismated by appellant, without the knowledge of appellee, on account of which appellee was compelled to replace them to customers at a cost of $20; that the shoes so returned were of no value whatever.

"That there was no market, or place known to or accessible to defendant, other than the factory of plaintiff, where it could obtain Oxford shoes or high shoes, not tramp last, in quantity, quality, kind, and in particular style and description like those ordered

by defendant from plaintiff on said respective dates of September 17, 1912, and November 22, 1912, at any time after the default and failure of plaintiff to comply with its agreement to manufacture and ship said Oxford shoes by February 1, 1913, or within a reasonable time thereafter; and to manufacture said high shoes, not tramp last, complete and ready for shipment by February 15, 1913, or within a reasonable time thereafter, and no such market where defendant could, at any time after such default and failure, obtain shoes of any kind to take the place of those so ordered from plaintiff that would meet the needs and demands of its retail trade in any of its several stores. That when it became known to defendant that plaintiff had failed so to manufacture and ship said Oxford shoes by February 1, 1913, defendant at once and on divers times thereafter communicated with plaintiff, and urged and requested plaintiff for shipments and deliveries of said shoes, and plaintiff in response made repeated promises of early shipments, which promises were relied on by defendant, but which were broken by plaintiff. That at divers times during said period of plaintiff's delays in shipments defendant requested plaintiff to make shipments to it of stock shoes to supply the place in its trade of those so ordered, but plaintiff failed and neglected to furnish and supply any of them, except to the amount and value of four hundred sixty-five and forty-hundredths dollars ($465.40), as hereinabove stated.

"* * * That at all times after February 1, 1913, and during and throughout the season of the year, 1913, defendant kept and maintained proper and adequate storerooms, properly equipped, at its

said three several places of business, and a sufficient force of clerks and employes, superintendents and managers to handle, care for, transact and carry on its retail business therein, all of which plaintiff then and there knew, but the expense thereof was not added to nor increased, nor any of its overhead expenses increased or added to, by reason of the sales of shoes therein, so ordered and so shipped from plaintiff to defendant; and, if plaintiff had manufactured and shipped to defendant all shoes so ordered on September 17, 1912, and November 22, 1912, in accordance with the terms of said orders, and of defendant's calls for shipments of said high shoes, not tramp last, defendant would and could have cared for, handled and sold the same, in its several stores in the usual course of its retail trade, without being thereby put to any additional expense by reason thereof over and above the expenses that it would otherwise have incurred in conducting and carrying on its business at its three several stores and places of business.''

The court also finds that all the shoes ordered by appellee as aforesaid, at the times of shipment designated in the contract, were of the value of the prices therein named, f. o. b. Chicago.

"That plaintiff manufactured for and sold the Oxford shoes to defendant, to be resold by it at four dollars ($4.00) per pair at retail, it being plaintiff's intention and design that such shoes should be put on the retail market at that price; and plaintiff manufactured for and sold to defendant seven hundred seventeen (717) pairs of high shoes, not tramp last, to be resold by it at four dollars ($4.00) per pair, and six hundred three (603) pairs at five dollars ($5.00) per

pair, it being plaintiff's intention and design that such shoes should be put on the retail market at those prices.''

The court stated its conclusions of law on the foregoing facts as follows: ''(1) That plaintiff is entitled to recover of and from defendant the unpaid balance of the purchase money for the shoes so sold and delivered to defendant the sum of three thousand two hundred eighty-three and twenty-seven hundredths dollars ($3,283.27), subject to all indebtedness existing in favor of defendant from plaintiff by reason of the facts found and set forth in the above and foregoing finding of facts.  (2) That defendant is entitled to recover of and from the plaintiff the sum of four hundred forty-two and fifty hundredths ($442.50) dollars for and on account of its loss sustained on three hundred fifty-four (354) pairs of Oxford shoes, shipped and delivered to defendant in defective condition, and by reason thereof returned by defendant to plaintiff, as found and set out in finding fourteen (14) of the above and foregoing findings of the court.  (3) That defendant is entitled to recover of and from the plaintiff the sum of six hundred and forty dollars ($640.00) on account of its loss sustained in the sale and replacement of one hundred sixty (160) pairs of Oxford shoes, as found and set forth in finding fifteen (15) of the foregoing findings of the court.  (4) That defendant is entitled to recover of and from the plaintiff the sum of seventeen hundred fifty-two and fifty-hundredths dollars ($1,752.50) on account of its loss sustained in the sales below price of six hundred fifty (650) pairs of Oxford shoes, as found and set forth in finding 15 of the above and foregoing findings of the court.  (5) That defendant is entitled to recover

416    APPELLATE COURT OF INDIANA,

J. P. Smith Shoe Co. *v.* Curme-Feltman Shoe Co.—71 Ind. App. 401.

of and from the plaintiff the sum of $80.00 on account of its loss sustained in the sales and replacements of 80 pairs of mismated Oxford shoes, as found and set forth in finding 15 of the above and foregoing findings of the court. (6) That defendant is entitled to recover of and from the plaintiff the sum of $773.50 on account of its loss sustained on 221 pairs of defective Oxford shoes shipped and delivered to defendant, as found and set forth in finding 15 of the above and foregoing findings of the court. (7) That defendant is entitled to recover of and from the plaintiff the sum of $157.50 on account of its loss sustained on sales of 150 pairs of defective high shoes, not tramp last, as found and set out in finding 19 of the above and foregoing findings of the court. (8) That defendant is entitled to recover of and from the plaintiff the sum of $160.00 on account of its loss sustained in sales and replacements of 40 pairs of defective high shoes, not tramp last, as found and set out in finding 19 of the above and foregoing findings of the court. (9) That defendant is entitled to recover of and from the plaintiff the sum of $20.00 on account of its loss sustained on sales and replacement of 5 pairs of mismated high shoes, not tramp last, as found and set out in finding 19 of the above and foregoing findings of the court. (10) That defendant is entitled to recover of and from the plaintiff the sum of $384.00; less freight and drayage, on account of its loss sustained by reason of the failure of plaintiff to manufacture, ship and deliver to defendant, at the proper time during the season of 1913, five hundred ninety-one pairs of high shoes, not tramp last, as found and set out in findings 11 and 18 of the above and foregoing findings of the court. That from

this sum of $384.00 plaintiff is entitled to have deducted the probable cost of freight and drayage on such shoes, if shipped, in the sum of $9.00, leaving a net balance of $375.00, which defendant is entitled to recover of and from plaintiff on account of this item. (11) That the defendant is entitled to recover of and from the plaintiff the aggregate of the above and foregoing items, as set out in the foregoing conclusions of law numbered respectively 2, 3, 4, 5, 6, 7, 8, 9, and 10, to wit, the sum of $4,401.00. That from this sum plaintiff is entitled to have deducted the sum of $3,283.27, being the unpaid balance of the purchase money for said shoes, and the further sum of $95.80 paid out as freight, express and drayage charges on shipments of such shoes, leaving a net balance of $1,021.93, which last-named sum defendant is entitled to recover of and from plaintiff, on the whole case, together with its costs of action.''

Appellant contends that the trial court erred in each of said conclusions of law, except the first, because ''it applied an erroneous rule of damages and allowed appellee, as a part of its damages, purely remote and speculative gross retail profits,'' and the facts found authorize no other or different conclusion; that the apparent effort in the findings to make the difference between the contract price of the shoes and the retail selling price identical with gross retail profits, and thereby bring the case under the general rule for the measure of damages in such cases, cannot change the fact that the court awarded appellee gross retail, indefinite, and speculative, profits; that denominating or calling gross retail profits by another name does not change their character or remove the indefiniteness and uncertainty on account

418        APPELLATE COURT OF INDIANA,

J. P. Smith Shoe Co. *v.* Curme-Feltman Shoe Co.—71 Ind. App. 401.

of which the law excludes such profits as the measure of damages in cases like the one now under consideration; that the true measure of damages applicable to this case is the general rule which allows the vendee to recover as damages for failure of the vendor to deliver goods according to contract the difference between the contract price and the market value of such goods at the time and place stipulated for delivery and interest.

Appellee asserts that both the evidence and the facts found by the court show that the shoes in question were ordered by it to be manufactured in special designs and patterns by appellant, and to be delivered at stated times to appellee, to be sold at retail to its customers at its several stores; that there was default on the part of appellant in the general particulars found and stated by the court; that, as a direct result of such defaults and failures on the part of appellant, appellee was damaged "in loss of profits and in other respects as found and allowed by the court;" that the evidence shows and the court found as a fact "that it was within the contemplation of the parties to the contract that the shoes were to be resold by the appellee, in the usual course of retail trade;" that the court has found and stated the value of all the shoes purchased at the time they were to have been delivered under the contract at appellee's several stores, which under the law means market value; that under the facts so found the result is substantially the same whether the general rule of damages be applied for the failure of the vendor to deliver the articles sold at the designated time and place, and of the kind and quality specified in the contract, or whether the rule of special damages be invoked,

which, on proper showing, permits the recovery of lost retail profits as damages.

The general rule for the measure of damages for the breach of an executory contract by the vendor, by failure to deliver the articles bargained for, 1. of the kind, quality, or quantity designated, at the time and place appointed for delivery, ordinarily limits the recovery to such damages as naturally and proximately result from the failure or default complained of, or such as may reasonably be presumed to have been within the contemplation of both parties at the time the contract was made, as the probable result of a breach thereof.

The amount of damages recoverable in such cases is ordinarily the difference in amount between the contract price and the market value of the articles or property in question at the time and place appointed for delivery. *Connersville Wagon Co.* v. *McFarlan Carriage Co.* (1906), 166 Ind. 123, 135, 76 N. E. 294, 3 L. R. A. (N. S.) 709; *Acme Cycle Co.* v. *Clarke* (1901), 157 Ind. 271, 276, 61 N. E. 561; *Berkey & Gay Furn. Co.* v. *Hascall* (1890), 123 Ind. 502, 507, 24 N. E. 336, 8 L. R. A. 65; *Rahm* v. *Deig* (1889), 121 Ind. 283, 286, 23 N. E. 141; 2 Sutherland, Damages (4th ed.) §§651, 652-662; 8 R. C. L. 451-461; *Hadley* v. *Baxendale,* 5 Eng. Ruling Cases 502, 504, 9 Exch. 341, 356; *Talcott* v. *Freedman* (1907), 149 Mich. 577, 579, 113 N. W. 13.

*Griffin* v. *Colver* (1858), 16 N. Y. 489, 69 Am. Dec. 718, is a leading case on the subject under consideration. In that case the Court of Appeals, among other things, said: "It is a well-established rule of the common law that the damages to be recovered for a breach of contract must be shown with certainty, and

not left to speculation or conjecture; and it is under this rule that profits are excluded from the estimate of damages in such cases, and not because there is anything in their nature which should *per se* prevent their allowance. Profits which would certainly have been realized but for the defendant's default are recoverable; those which are speculative, or contingent are not. * * * Indeed, it is clear that whenever profits are rejected as an item of damages, it is because they are subject to too many contingencies, and are too dependent upon the fluctuations of markets and the chances of business, to constitute a safe criterion for an estimate of damages. * * * The broad, general rule in such cases is, that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained; and this rule is subject to but two conditions: the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed.

"The familiar rules on the subject are all subordinate to these. For instance: That the damages must flow directly and naturally from the breach of contract, is a mere mode of expressing the first; and that they must be not the remote but proximate consequence of such breach, and must not be speculative or contingent, are different modifications of the last.

"These two conditions are entirely separate and independent, and to blend them tends to confusion; thus the damages claimed may be the ordinary and natural, and even necessary result of the breach, and

yet, if in their nature uncertain, they must be rejected. * * * So they may be definite and certain, and clearly consequent upon the breach of contract, and yet if such as would not naturally flow from such breach, but, for some special circumstances, collateral to the contract itself or foreign to its apparent object, they cannot be recovered * * *."

*Hadley* v. *Baxendale, supra,* is a leading English case on the subject, and has frequently been cited with approval and followed by the courts of America. In that case it is said: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.,* according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances, so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract."

The rules for the measure of damages sustained on account of the breach of an executory contract for the sale of goods generally exclude consideration of future profits, because they are uncertain of realization, and are contingent upon many things collateral to the contract of sale and cannot usually be said to have been within the contemplation of the parties when the contract was entered into.

But where such profits may be ascertained with reasonable certainty, and the loss of them is a proximate result of the breach of the contract of sale, or where the facts show with reasonable certainty that such future profits were contemplated by the parties when the contract was entered into, they may properly be considered in estimating the damages sustained by reason of a breach of such contract.

While there is lack of uniformity in stating and applying the rules, it is generally held that prospective profits, as such, may not be made the basis or measure of damages to be awarded for the breach of such contract, but may be proved and considered in estimating the actual damages sustained on account thereof. Where such profits may be ascertained with reasonable certainty, and their loss is the natural or proximate result of the breach complained of, or where it is reasonably certain from all the facts and circumstances of the case that prospective profits to be derived by the vendee were contemplated by both vendor and vendee, when the original contract of sale was made, the amount of such profits lost on account of the breach of the contract may afford the most satisfactory means of ascertain-

ing the actual damages occasioned by such breach, though such lost profits are not accepted or considered as the measure of the damages to be awarded, but are only to be considered in connection with other evidence, which bears on the question, in estimating the damages that naturally and proximately resulted from the breach of the contract.

Without making such profits and actual measure of damages, it may happen in particular cases that the actual damages sustained may not differ substantially in amount from the aggregate of such lost profits. The amount awarded will not necessarily be erroneous or excessive because of such fact, if on consideration of all the proved facts and circumstances relating to the question of damages, the amount so awarded gives only fair and reasonable compensation for the actual damages sustained as the proximate result of the breach of such contract. 8 R. C. L. §§63-66, pp. 503-506, and cases cited; *Connersville Wagon Co.* v. *McFarlan Carriage Co., supra,* 130, 134, 136; *Acme Cycle Co.* v. *Clarke, supra,* 276, 278; *Berkey & Gay Furn. Co.* v. *Hascall, supra,* 508; *Rahm* v. *Deig, supra,* 286, 288; *City of Terre Haute* v. *Hudnut* (1887), 112 Ind. 542, 551, 559, 113 N. E. 686; *Jackson* v. *Stanfield* (1894), 137 Ind. 592, 616, 619, 620, 36 N. E. 345, 37 N. E. 14, 23 L. R. A. 588; *Simplex, etc., Appliance Co.* v. *Western, etc., Belting Co.* (1909), 173 Ind. 1, 10, 12, 88 N. E. 682; *Horace F. Wood Transfer Co.* v. *Shelton* (1913), 180 Ind. 273, 278, 101 N. E. 718; *City of Logansport* v. *Justice* (1881), 74 Ind. 378, 39 Am. Rep. 79; *Simmons* v. *Brown* (1858), 5 R. I. 299, 73 Am. Dec. 66, 69; *Goldston* v. *Wade* (1910), 123 N. Y. Supp. 114, 115; *Winston, etc., Machine Co.* v. *Wells-Whitehead To-*

*bacco Co.* (1906), 141 N. C. 284, 53 S. E. 885, 8 L. R. A. (N. S.) 255, and notes; *Wallace* v. *Pennsylvania R. Co.* (1900), 195 Pa. 127, 45 Atl. 685, 52 L. R. A. 33; *Wells* v. *National Life Assn.* (1900), 99 Fed. 222, 39 C. C. A. 476, 53 L. R. A. 33, and notes; *Swain* v. *Schieffelin* (1892), 134 N. Y. 471, 31 N. E. 1025, 18 L. R. A. 385, 387, 389; *Anvil Mining Co.* v. *Humble* (1894), 153 U. S. 540, 14 Sup. Ct. 523, 38 L. Ed. 814, 817; *Cincinnati Gas Co.* v. *Western, etc., Co.* (1894), 152 U. S. 201, 14 Sup. Ct. 523, 38 L. Ed. 411, 413; *Emerson* v. *Pacific, etc., Packing Co.* (1905), 96 Minn. 1, 104 N. W. 573, 1 L. R. A. (N. S.) 445, 450, 113 Am. St. 603, 6 Ann. Cas. 973; *Johnson* v. *Miller* (1914), (Tex. Civ. App.) 163 S. W. 592, 594; *Enterprise Mfg. Co.* v. *Campbell* (1909), 121 S. W. 1040; *Dilley & Son* v. *Ratcliff* (1902), 29 Tex. Civ. App. 545, 69 S. W. 237, 238.

In *Simmons* v. *Brown, supra,* the Supreme Court of Rhode Island said: "In *Waters* v. *Towers,* 20 Eng. L. & Eq. 410, the action was for breach of contract for the nondelivery of certain machinery, within a reasonable time; and special damages were laid, that the plaintiffs had been prevented from completing their contract with a third person, whereby they had lost the profits which they would have made, had they completed it. Evidence as to this last contract was admitted, and of the advantage to the plaintiff from its performance. It was held, that the evidence as to the profits was properly admitted; and that the jury might assess damages to the amount of them, though they were not bound to do so; and the court said, if reasonable evidence is given that the amount of the profits would have been made, if the defendant had performed his contract, the damages may be as-

sessed accordingly; and this, though the second con-
tract was one which could not have been enforced
against the plaintiff, on the ground of the statute of
frauds.

"These cases are all for breaches of contract. In
the first two, the profits were not only allowed to be
given in evidence, but are made the measure of dam-
ages. In the last, though the evidence was held to be
properly admitted as the basis for estimating the
damages, the profits were not held to be the measure
of damages; and it was left to the jury, with this
basis, to estimate them. There is nothing in the term
'profits,' that excludes their being given in evidence,
more than any other item of damages; but proof of
them is made to depend, like all other proof in rela-
tion to damages, upon the fact that the loss of them
is the natural and direct result of the injury, and not
a remote consequence; and the language of the court,
in the last case, is significant: 'that if reasonable
proof be given that the plaintiff *would have made* the
profits, that is, that those profits were the direct
result of the performance by the defendant, and the
loss the direct result of the breach, it was sufficient to
warrant a recovery of them.' "

In the case of *United States* v. *Behan* (1884); 110
U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168, 170, the court
said: "The *prima facie* measure of damages for the
breach of a contract is the amount of the loss which
the injured party has sustained thereby. If the
breach consists in preventing the performance of the
contract, without the fault of the other party, who is
willing to perform it, the loss of the latter will con-
sist of two distinct items or grounds of damage,
namely: first, what he has already expended towards

performance less the value of materials on hand; secondly, the profits that he would realize by performing the whole contract. The second item, profits, cannot always be recovered. They may be too remote and speculative in their character, and therefore incapable of that clear and direct proof which the law requires. But when, in the language of Chief Justice Nelson, in the case of *Masterson* v. *Mayor of Brooklyn,* 7 Hill, 69, they are 'the direct and immediate fruits of the contract,' they are free from this objection; they are then 'part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfilment of any other stipulation.' Still, in order to furnish a ground of recovery in damages, they must be proved. If not proved, or if they are of such a remote and speculative character that they cannot be legally proved, the party is confined to his loss of actual outlay and expense. This loss, however, he is clearly entitled to recover in all cases, unless the other party, who has voluntarily stopped the performance of the contract, can show the contrary.''

In *Howard* v. *Stillwell, etc., Mfg. Co.* (1891), 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147, the court said: ''The authorities both in the United States and England are agreed that, as a general rule, subject to certain well-established qualifications, the anticipated profits prevented by the breach of a contract are not recoverable in the way of damages for such breach; but in the application of this principle the same uniformity in the decisions does not exist. In some cases of almost exact analogy, in the facts, the

adjudications of the courts in the different States are directly opposite. The grounds upon which the general rule of excluding profits, in estimating damages, rests, are (1) that in the greater number of cases such expected profits are too dependent upon numerous, uncertain and changing contingencies to constitute a definite and trustworthy measure of actual damages; (2) because such loss of profits is ordinarily remote and not, as a matter of course, the direct and immediate result of the nonfulfilment of the contract; (3) and because most frequently the engagement to pay such loss of profits, in the case of default in the performance, is not a part of the contract itself, nor can it be implied from its nature and terms.   *   *   *
But it is equally well settled that the profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into. *United States* v. *Behan,* 110 U. S. 338, 345, 346, 347 (28 .: 168, 179-171); *Western Union Tel. Co.* v. *Hall,* 124 U. S. 444, 454, 456 (31: 479, 483); *Philadelphia, Wilmington & Baltimore Railroad Co.* v. *Howard,* 13 How. 307 (14: 157).''

In *Wolcott, etc., Co.* v. *Mount* (1875), 38 N. J. Law 496, 500, 20 Am. Rep. 425, the court said: ''The second question raised in the cause respects the measure of damages. The rule applied in the court below made the plaintiff whole, as he was allowed to recover

the difference between the value of the crop produced and the crop which would have been produced if the seed had been answerable to the warranty. This embraces profits, and the contention was, that profits are too remote and uncertain to constitute an ingredient in the recompense which the law gives on a breach of contract.

"But this argument comprises a latitudinarian and incorrect statement of the legal rule. Profits sometimes are not, in a legal point of view, either remote or uncertain. Where the situation of the parties is such that, supposing their attention to have been directed to the contingency, they must have perceived, at the time of the making of the contract, that its breach would probably result in the loss of definite profits, such profits being of an ascertainable nature, the compensation which the law affords to the injured party will embrace these profits."

In considering the question of future profits as an element of damages, where articles are purchased to be resold, the text-writers and courts have 6. generally recognized distinctions between cases where there were actual resale contracts made by the vendee and known to the vendor, and cases where there were no such existing contracts at the time of the original sale, or where the sales were made without reference to or knowledge of such resale contracts. Distinctions have also been recognized between sales to a person having an established business or trade, where purchases are made of articles suitable to such trade or established business with the knowledge of the vendor, and cases where articles have been purchased for resale in a prospective new business or enterprise having no established trade.

In the latter instance it is held that profits are too uncertain, indefinite, and speculative to be considered as an element of damages, while in the former it has frequently been held that an established trade or going business may, with reasonable certainty afford the means of ascertaining future profits, and warrant their consideration, not as the measure of damages, but as a means of ascertaining the actual damages sustained in a given case. *Aetna Life Ins. Co.* v. *Nexsen* (1882), 84 Ind. 347, 355, 43 Am. Rep. 91; *Niagara Fire Ins. Co.* v. *Greene* (1881), 77 Ind. 590, 594; *City of Terre Haute* v. *Hudnut, supra,* 555, 556; *Montgomery County, etc., Society* v. *Harwood* (1891), 126 Ind. 440, 442, 26 N. E. 182, 10 L. R. A. 532; *Winston, etc., Machine Co.* v. *Wells-Whitehead Tobacco Co., supra,* and notes; *Carpenter* v. *First Nat. Bank* (1887), 119 Ill. 352, 360, 10 N. E. 18; *Central Coal, etc., Co.* v. *Hartman* (1901), 111 Fed. 96, 49 C. C. A. 244, 246; *Lazier Gas Engine Co.* v. *DuBois* (1904), 130 Fed. 834, 65 C. C. A. 172, 176; *Border City Ice, etc., Co.* v. *Adams* (1901), 69 Ark. 219, 62 S. W. 591, 592; *Atchison, etc., R. Co.* v. *Thomas* (1904), 70 Kan. 409, 78 Pac. 861, 865; *Thorn* v. *Morgan, etc., Co.* (1903), 135 Mich. 51, 97 N. W. 43, 45; *Jordan, etc., Co.* v. *Patterson* (1896), 67 Conn. 473, 482, 35 Atl. 521; *H. G. Holloway & Bro.* v. *White, etc., Shoe Co.* (1906), 151 Fed. 216, 80 C. C. A. 586, 8 L. R. A. (N. S.) 704; 1 Sedgwick, Damages (9th ed.) §§182, 182a, 183.

In *Thorn* v. *Morgan, etc., Co., supra,* the Supreme Court of Michigan said: "The first is the common measure of damages, where one can go into the market and procure the kind of goods contracted for, and is fully adaquate compensation usually in such cases. Where this cannot be done, another measure of dam-

ages is proper. It is shown in that case that many of these goods were ordered for the fall trade; that orders for garments had to be taken early, to give time for manufacture; and therefore that prompt delivery of samples and material for sample garments was indispensable. If, as claimed, the plaintiff knew and understood this, losses incurred by reason of nondelivery were recoverable, if the defendant could not have avoided such loss by purchasing goods elsewhere.''

In *Montgomery County, etc., Society* v. *Harwood, supra,* our Supreme Court states that: ''Profits are frequently taken into consideration in estimating and assessing the damages accruing by reason of the interruption or destruction of an established business, and proof in such case is admissible to show the amount of business done and profits realized prior to the interruption or stoppage of the business to enable the jury or court trying the case to arrive as nearly as possible at the actual damage sustained by the injured party. This affords some reasonable basis to reckon from, as, in case of an established business, it is reasonable to presume that, if pursued in the same manner, it will continue to yield a like profit.''

In 8 R. C. L. 503, in discussing the extent of certainty required in assessing damages for the breach of an executory contract (§63), it is stated that: ''While, as a general rule, no recovery can be had for loss of profits which are uncertain, contingent, conjectural, or speculative, it must be borne in mind that since profits are prospective they must, to some extent, be uncertain and problematical, and so, on that account or on account of the difficulties in the way of proof, a person complaining of breach of con-

tract cannot be deprived of all remedy. The general rule that absolute certainty is not required applies in this as in other respects. It is usually the right of the innocent party to prove the nature of his contract, the circumstances surrounding and following its breach, and the consequences naturally and plainly traceable to it, and then it is for the jury, under proper instructions as to the rules of damages, to determine the compensation to be awarded for the breach. No hard and fast rule for ascertaining the profits, for the loss of which a recovery may be had, can be laid down. Such profits must be determined according to the circumstances of each particular case, and the subject-matter of the contract.  *  *  *
It has been said that four principal considerations have been recognized and applied, namely: first, how far the contract under consideration specifically provides for the award of damages for prevented gains upon its breach, or reasonably implies such an award as a necessary effect of a natural construction of its terms; second, the degree of certainty with which the harm can be traced to the wrongful conduct complained of as its legal cause; third, the extent to which the inherent difficulties and uncertainties of calculating the amount of prevented gains render the measure of damages speculative and untrustworthy; fourth, the possibility of applying to the controversy some more satisfactory standard of compensation. When profits are spoken of as not recoverable, reference is generally had to the profits of dependent and collateral engagements, or those contingent upon future bargains, speculations, or states of the market, and not the difference between the agreed price of something contracted for and its ascertainable value

or cost. Profits sometimes are not, in a legal point of view, either remote or uncertain however, and in some cases are the best possible measure of damages, for the very reason that the loss is indisputable and the amount can be estimated with almost absolute certainty.''

In *Blagen* v. *Thompson* (1893), 23 Ore. 239, 31 Pac. 647, 18 L. R. A. 315, the Supreme Court of Oregon states that: ''Where one violates and entirely repudiates his contract with another, the damages sustained by the injured party are, as Earl, J., said, 'nearly always involved in some uncertainty and contingency; usually they are to be worked out in the future, and they can be determined only approximately upon reasonable conjecture and probable estimates. They may be so uncertain, contingent, and imaginary as to be incapable of adequate proof, and then they cannot be recovered, because they cannot be proved. But when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing on account of such uncertainty any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damages which he has caused is uncertain.' *Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 209, 4 N. E. Rep. 264. The rule that damages which are uncertain or contingent cannot be recovered, does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such gain or benefit would be derived at all. It only applies to such damages as are not the cer-

tain result of the breach, and not to such as are the certain result but uncertain in amount.''

In *Hunt* v. *Oregon, etc., R. Co.* (1888), (C. C.) 36 Fed. 481, 1 L. R. A. 842, it is stated that: ''The tendency of judicial decisions seems to be in favor of allowing a party to show, if he can, that he has suffered some damage by the breach of a contract, either in gains prevented or losses sustained, whenever such gains or losses directly relate to or arise out of the subject-matter of the contract, and not something collateral thereto.''

In 8 R. C. L. §62, p. 501, the author states that: ''The earlier decisions both in England and in this country generally exclude profits altogether as an element of recoverable damages both in actions for breach of contract and in tort. But this rule, under more modern practice, has been generally abandoned in both classes of actions, and, as a result, the right to recover profits is now generally determined by the same rules as govern the recovery of other damages. It may therefore be said that lost profits are a proper element of damage when such loss is the direct and necessary result of the defendant's acts, or where, * * * the loss of profits may reasonably be supposed to have been within the contemplation of the parties when the contract was made, as the probable result of its violation, and where, in both classes of cases, such profits can be shown with a reasonable degree of certainty.'' See, also, *Moulthrop* v. *Hyett* (1894), 105 Ala. 493, 17 South. 32, 53 Am. St. 139; *Guezkow Bros. Co.* v. *A. H. Andrews & Co.* (1896), 92 Wis. 214, 66 N. W. 119, 52 L. R. A. 209, and notes; *Simmons* v. *Brown, supra.*

The finding of facts does not make a case of resale

orders known to the vendor at the time of the original sale to appellee by appellant, but the facts do show that appellee had an established business, a part of which had been built up by the sale of the shoes made by appellant, of the particular brands and grades in controversy in this suit; that appellant knew of these facts and sold the shoes aforesaid to appellee for resale at its several stores where such trade had been so established; that there was an existing demand or inquiry for such shoes among the customers of appellee's stores prior to and during the season for which the shoes in controversy were purchased, amply sufficient to enable appellee to have sold all the shoes so purchased during such season for the established prices stated in the findings, had they been delivered according to contract and been of the grades and quality so purchased by appellee.

Appellant knew the facts aforesaid when the shoes were ordered. The shoes were bought before they were manufactured, and were to be of the style, brand and quality designated to meet the demands of the trade so established. They were sold by appellant, and bought by appellee, with full knowledge that they were to be resold to existing customers of appellee's stores who had already demonstrated their desire for and willingness to purchase such shoes at the established prices.

Under the authorities above cited, such established trade, known to the vendor, supplies the reasonable certainty of profits which the law makes requisite to a consideration of future profits as an element of damages for the breach of a contract of sale for future delivery of articles so manufactured and sold for such specific purpose or trade. *Edwards Mfg. Co.* v.

MAY TERM, 1919.          435

J. P. Smith Shoe Co. *v.* Curme-Feltman Shoe Co.—71 Ind. App. 401.

*Stoops* (1913), 54 Ind. App. 361, 364, 102 N. E. 980, and cases cited; *Oil-Well Supply Co.* v. *Watson* (1907), 168 Ind. 603, 608, 610, 80 N. E. 157, 15 L. R. A. (N. S.) 868; *Connersville Wagon Co.* v. *McFarlan Carriage Co., supra,* 131; *Pape* v. *Ferguson* (1902), 28 Ind. App. 298, 301, 62 N. E. 712; *Goldston* v. *Wade, supra.*

The findings also show that, at the time of appellant's default in the delivery of the shoes as aforesaid, there was no market at which, or dealer

7.  from whom, shoes of the particular brand, make and quality could be obtained. Where such conditions exist, the actual loss sustained is the measure of recoverable damages, and the price at which the shoes could have been sold by appellee in the due course of business may be considered in assessing such damages. *Berkey & Gay Furn. Co.* v. *Hascall, supra; Rahm* v. *Deig, supra,* 288; *Pape* v. *Ferguson, supra,* 305; *Vickery* v. *McCormick* (1889), 117 Ind. 594, 597, 20 N. E. 495; 2 Sutherland, Damages (4th ed.) §§662, 663, 664; 2 Sedgwick, Damages (9th ed.) §§734, 735, 735a, 735b; *Perry Tie, etc., Co.* v. *Reynolds* (1902), 100 Va. 264, 40 S. E. 919, 921. In *Jordan, etc., Co.* v. *Patterson, supra,* 481, 482, it is said: "The market value of any goods may be shown by actual sales in the way of ordinary business."

In *Pape* v. *Ferguson, supra,* 305, this court said: "There was evidence that this particular kind of lumber and logs had no particular market value, and witnesses were permitted to testify as to their actual value. The court states in the findings what the value was at the time and place of delivery. This, from the evidence, means actual value. The market price of a thing is no more than evidence of its value."

See, also, *Jonas* v. *Noel* (1897), 98 Tenn. 440, 39 S. W. 724, 36 L. R. A. 862; *Blair Co.* v. *Rose* (1901), 26 Ind. App. 487, 490, 60 N. E. 10; *Luedde* v. *Hooper* (1902), 95 Tex. 172, 66 S. W. 55, 56; *Allen* v. *Fox* (1873), 51 N. Y. 562, 10 Am. Rep. 641; 2 Sutherland, Damages §654, p. 2301.

Appellant also contends that the findings show that the defects found by the court were patent, and that by the acceptance of the shoes appellee waived its right to any damages on account of such defects under the rule of *caveat emptor*. The findings show that the shoes were ordered to be manufactured; that they were to be different from other shoes made by appellant; that the name of appellee was to be stamped thereon, and the shoes were to be of a special design, pattern and grade, to be sold by appellee to existing customers who had become acquainted with such shoes by previous purchases; by reason thereof there was an established trade in, and demand for, such shoes, all of which was known to both appellant and appellee. Under such conditions, there is an implied warranty that the articles so manufactured and sold will be reasonably suitable for the purpose intended. Furthermore, the findings show that the defects were not known and would not have been ascertained by ordinary inspection when the shoes were received, most of the defects were of a character that were not readily observable, and did not become known until some of the shoes had been sold to and worn by customers. Considering the way in which the shoes were ordered, made, and delivered, the mode of shipment, and the opportunities of inspection when they were received, as shown by the findings, the principle invoked by appellant is not

applicable, and appellee is not by the rule of *caveat emptor* precluded from recouping such damages as it may lawfully be entitled to recover for breach of the contract of sale. Under such a state of facts, appellee was not bound to return shoes, even if found defective in some particulars, but could keep them, and if sued for the purchase price, set up its claim for damages by way of counterclaim, if the shoes did not fill the requirements of such implied warranty. *Edwards Mfg. Co.* v. *Stoops, supra,* 365; *Zimmerman* v. *Druecker* (1896), 15 Ind. App. 512, 514, 44 N. E. 557; *Glucose Sugar, etc., Co.* v. *Climax Coffee, etc., Co.* (1907), 40 Ind. App. 182, 184, 81 N. E. 589; *Oil-Well Supply Co.* v. *Watson, supra,* 608, 610.

Appellant also contends that the conclusions of law are erroneous because they allow gross retail profits, which were not contemplated by the parties when the sales were made to appellee. As already stated, the findings show that the shoes were of a special design, and ordered to be resold at retail, at certain prices, all of which was known to appellant. The court also finds that the parties contemplated such resale at the retailer's profit, and found the value of the shoes at the time and place appointed for delivery to be the amount of the retail price of such shoes, when of the grade, brand, and quality so purchased by appellee. *Perry Tie, etc., Co.* v. *Reynolds, supra; Booth* v. *Spuyten, etc., Mill Co.* (1875), 60 N. Y. 487. The findings also show that appellee's overhead expenses were not changed by the failure of appellant to deliver the shoes purchased according to contract, and that all the shoes ordered could have been sold at the regular retail prices without any additional expense to appellee. The fact that

the parties contemplated such retail profits is supported by appellant's previous dealings with appellee, by its knowledge of the trade built up on sales of the particular brand and make of shoes ordered by appellee, and its knowledge that appellees' business was that of a retail dealer of shoes at its several stores maintained for that purpose. The conclusions do not show that gross retail profits, as such, were taken as the measure of appellee's damages, without due consideration of other facts that might materially affect the question of damages.

Where articles are ordered for a particular purpose, and not delivered according to contract, if such purpose is known to the vendor, the vendee may procure them elsewhere if he can do so, even at a higher price, if necessary to secure them, and hold the vendor liable for the increased cost. 2 Sutherland, Damages (4th ed.) §662, p. 2339 *et seq.* In the case at bar the court finds the actual value of the shoes, as ordered, to be the amount or equivalent of the retail price, and by other facts shows that the actual damage sustained by appellant's default is the difference between the value of the shoes at the time and place appointed for delivery, and the contract price, subject to certain minor considerations as indicated in the findings. On the facts so found, the conclusions of law are not erroneous under the law as above announced.

It is also contended that the court erred in overruling appellant's motion for a new trial.

It is urged that the damages are excessive, because the evidence shows that they include gross retail profits. This question has been considered in our discussion of the conclusions of law, and decided adversely to appellant's contention.

It is also contended that the court erred in permitting evidence to the effect that there was a demand for the shoes ordered by appellee, and that such evidence should have been excluded on appellant's objection that it was speculative and too remote to be considered in estimating damages to be assessed against appellant. Under the issues, the inquiry or demand for the shoes in controversy was an important subject for consideration, and was a material issuable fact to be proved or disproved. The question was not subject to the objections urged, and the court did not err in overruling the objection thereto.

Appellant also contends that the court erred in excluding from the evidence certain exhibits consisting of certain records kept by appellant in the regular course of its business while engaged in manufacturing the shoes ordered by appellee. The exhibits offered were identified by the witness Martha Carlson, who testified that the records were made by her or by persons under her direction and supervision as foreman of that department, and were made as the work progressed from temporary memoranda furnished by the workmen engaged in the manufacture of said shoes, and showed, among other things, the length of time the shoes in controversy were kept on the lasts before being removed for shipment to appellee. The witness also testified that such exhibits were the only records in existence of the facts shown therein by which a complete record was kept of the date work was begun, names of shoes, style, sizes, width, date "lasted," "last pulled," date "shipped," and numerous other facts constituting a complete record of all the details of stock, workman-

ship, finished product, shipment and identification of the shoes in controversy. She also testified that she had no personal recollection of the facts shown by such records.

Appellee objected on the ground that the exhibits were self-serving declarations of appellant, made in the absence of appellee; that they were not part of the *res gestae* of any transaction between the parties, and were hearsay, secondary evidence, wholly irrelevant and immaterial to any issue in the case.

The appellee alleged in its counterclaim "that each and every pair of shoes had been taken from the lasts too soon and while the shoes were yet too green and by reason thereof would not wear well or hold their shape and were practically valueless." Appellee offered evidence tending to support such allegation, and the trial court found the facts to be substantially as alleged. Appellant proved by a competent witness that in the manufacture of such shoes five days was a sufficient length of time for them to remain on the lasts to secure good results. It offered to show by the excluded exhibits that the shoes in controversy remained on the lasts from seven to ten days.

This was material evidence. The records were sufficiently identified, and were shown to have been duly kept by competent persons employed by appellant for that purpose in the regular course of the business of manufacturing shoes, for the purpose of preserving a detailed record of the dates on which the work was begun, different portions of the work done, and when the manufacturing process was completed, and all the facts connected therewith and necessary to the complete identification of the stock, process of manufacture, and the finished product of the factory. The

shoes were ordered by appellee to be manufactured. The records excluded purported to be the records kept in the due course of the business of manufacturing the particular shoes in controversy. They were shown to have been made from day to day as the work progressed from temporary memoranda furnished by the workmen and from data obtained in the regular and usual course of business in appellant's factory. The records were therefore connected with the transactions of the manufacture and shipment of the shoes in controversy. Both appellant and appellee were connected with such transactions, and the records excluded are a part of the *res gestae* thereof, and competent evidence to be received and considered in deciding the issue of defects in the shoes presented by appellee's counterclaim.

The question presented has been considered and passed upon by this court in several cases so recently that extended discussion can serve no useful purpose. The facts of this case bring it within the rule of records duly kept in the regular course of business. The trial court therefore erred in excluding the offered exhibits containing such evidence. *Marks* v. *Box* (1913), 54 Ind. App. 487, 500, 103 N. E. 27, and cases cited; *State, ex rel.* v. *Central States Bridge Co.* (1912), 49 Ind. App. 544, 549, 97 N. E. 803, and cases cited; *Place* v. *Baugher* (1902), 159 Ind. 232, 235, 64 N. E. 852; *Indianapolis Outfitting Co.* v. *Cheyne Electric Co.* (1913), 52 Ind. App. 153, 155, 100 N. E. 468.

We are unable to say from the record before us that the error in excluding this evidence was not harmful to appellant. It related to a material 12. issuable fact which was found against appellant. Such error is presumed to have been

harmful, and must be so considered unless the record shows the contrary.

The judgment is therefore reversed, with instructions to the lower court to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

Ibach, C. J., Batman, P. J., Dausman, Caldwell and Hottel, JJ., concur.