**KINCAID COTTON COMPANY, INC.,**
**Plaintiff-Appellant,**

v.

**KESEY BROTHERS, Defendant-**
**Appellee.**

No. 74–2820
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 2, 1974.

---

* Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Lucius D. Bunton, Odessa, Tex., Marvin Jay Wise, Dallas, Tex., for plaintiff-appellant.

Richard D. Naylor, Pecos, Tex., for defendant-appellee.

Before BELL, SIMPSON and MORGAN, Circuit Judges.

SIMPSON, Circuit Judge:

Plaintiff-appellant, Kincaid Cotton Company, Inc., a North Carolina corporation, brought suit in the district court for breach of contract against defendant-appellee Kesey Brothers, a Texas partnership. The complaint, alleging diversity jurisdiction, sought declaratory relief and specific performance or, in the alternative, damages. The district court without holding an evidentiary hearing entered judgment for Kesey Brothers. Because the district court appeared to disregard Texas law in construing the contract and because factual issues which could be determinative were not satisfactorily resolved by stipulations of fact agreed to by the parties, we vacate and remand for trial.

This suit is based on a contract for the sale of cotton entered into on March 30, 1973. Appellant agreed to buy and appellee agreed to sell all cotton meeting certain specifications and grown on certain acreage near Pecos, Texas. Three grades were priced at 48¢ per lb. and one at 46¢ per lb. The clause in the contract which is the focus of the present controversy provides that the cotton is "[t]o be picked and documents delivered by January 1, 1974. Buyer has option on acceptable cotton after January 1, 1974."

Appellee delivered all cotton meeting contract requirements and which was ginned prior to January 1 at the contract price but offered delivery on cotton ginned after January 1 only at the then current market price, at that time more than double the contract price. Appellant, asserting that the option price was the lower contract price, refused delivery and filed suit.

The decisive issues raised are whether the option provision is valid and, if so, what price governs its exercise. Buyer-appellant takes the position that the option provision is valid and was intended to be exercised at the contract price. It views the option as its "insurance" of prompt delivery, for without it, the seller could take advantage of a rising market by delaying delivery and demanding current prices, but in a falling market could gin and tender the entire cotton harvest before January 1. Seller-appellee contends that the option is invalid, but in any event was intended solely to insure a source of supply at the current market price.

At the request of the court below, to avoid the necessity for an evidentiary hearing, the parties entered into stipulations of fact, only three of which need be considered on this appeal. Stipulation XVI provided that appellant would

have offered, over objection, testimony that the contract used had evolved through custom and usage between cotton buyers and growers over the past several years. On the other hand, Stipulation XVII provided that the appellee would have offered, over objection, testimony that the contract was not a customary one in the cotton industry, but that customary contracts contained provisions specifying option price. Stipulation XVIII stated that no separate consideration supported the option provision.

The district court held that the option clause was divisible from the remainder of the contract and was invalid because it did not "contain any provision for consideration" and because it did not indicate price to be paid or time for performance.

■ On the basis of the record before us, we are unable to discern what the trial judge determined Texas law to be or, for that matter, whether he in fact applied Texas law, as a federal court sitting in diversity is *Erie*-bound to do. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

The district judge held the option clause invalid because it failed to provide for consideration. He gave no indication whether Texas law requires separate consideration for an option provision, in which case Stipulation XVIII conclusively determined the result against appellant, or whether Texas law allows consideration for the underlying contract to support an option provision. If the latter, it would have been impossible for the district court to determine whether the consideration for the underlying contract supported the option provision without holding an evidentiary hearing. Stipulation XVIII did not resolve this issue. It provided only that no independent consideration for the option was given.

We have not found, nor have counsel directed our attention to, any Texas Supreme Court cases which address the issue of consideration to support an option provision in circumstances similar to this case. We do note, however, that the Texas Court of Civil Appeals has spoken to this issue. See Echols v. Bloom, Tex. Civ.App.1972, 485 S.W.2d 798 (ref. n. r. e.); Blaffer & Farish v. Gulf Pipe Line Co., Tex.Civ.App.1919, 218 S.W. 89 (no writ hist. avail.).

■■ The task of ascertaining applicable state law is not always an easy one. Where the highest state court has not spoken, intermediate appellate decisions may be binding and must in any event be given appropriate consideration. See, Ramirez v. Autobuses Blancos Flecha Roja, S.A. De C.V., 5 Cir. 1973, 486 F.2d 493; Ford Motor Company v. Mathis, 5 Cir. 1963, 322 F.2d 267. We think the task of discerning whether Texas law requires independent consideration is one initially for the trial court.

The district judge also held the option provision invalid for failure to specify time for performance and price, and "this Court can not write essential provisions for the parties." Here again, he did not identify his conception of the controlling Texas law on these issues. He made no reference to the Uniform Commercial Code, adopted in Texas in 1965 and included in the Business and Commercial Code in 1967, V.T.C.A., Bus. and C. Sec. 1.101 et seq., nor have counsel on this appeal offered guidance on the relevance of the Code. On remand the district court should consider its relevance in determining Texas law.

Without restricting in any way the scope of the inquiry of the court on remand, we direct the attention of the parties to several sections of the Code which may be pertinent. Sec. 2.204 provides in part:

> (a) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

.     .     .     .     .     .

(c) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

On remand, the court may wish to consider whether the conduct of the parties clarified intent with regard to time for performance, and if not, the applicability of Sec. 2.309, which provides for a "reasonable time." While the issue raised as to price is whether the parties did in fact agree to one, Sec. 2.305, providing for a "reasonable price" where not otherwise agreed upon, would appear to indicate that failure to specify price is not a ground for holding a contract invalid under Texas law.

The standards to which Texas law holds contracts on these issues and their applicability to the present case we leave for initial determination and exposition by the trial court.

Several relevant factual issues were also left unresolved below, in spite of counsel's attempt to aid the lower court to reach a decision without holding an evidentiary hearing. We believe that a trial is required to provide a sound basis for rendering a decision in this case and remand for trial.

There is no disposition on our part to limit the inquiry of the trial court on remand, but nonetheless we note several of the unresolved factual issues which bear on a correct disposition of this suit: (a) whether consideration for the base contract was intended to support the option clause, an issue not addressed by Stipulation XVIII, as noted above; (b) whether the parties would have contracted if the option provision were not included; (c) whether the parties intended the contract price to apply to cotton delivered under the option; (d) whether the option was intended as "insurance" of prompt delivery or as assurance of a source of supply; and finally (e) what was custom and usage with regard to similar contracts, left in dispute by Stipulations XVI and XVII. Sec. 1.

205(b) V.T.C.A. provides in part that the "existence and scope" of a "usage of trade," which is "any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question," "are to be proved as facts." Sec. 1.205(c) V.T.C.A. provides that such usage of trade gives "particular meaning to" and supplements the agreement between the parties. This Section is evidence of an attempt by the framers of the Code to provide a flexible and sympathetic legal background for commercial dealings, and of the importance of a court's determining the factual context of a business transaction.

The applicability of the Code and its relevance to fact issues are for the trial court to determine; the factual issues noted above are to be developed as the court directs.

Vacated and remanded for trial.